[No. 5285.   Decided April 10, 1905.]

MARY ANN HARTLEY, *Respondent,* v. C. J. LORD, *as Executor of the Last Will and Testament of Horatio Hartley, Deceased, Appellant.*[1]

WILLS—TESTAMENTARY CAPACITY—EVIDENCE—SUFFICIENCY. The evidence sustains a finding of want of testamentary capacity to make a will, where it appears that for fifteen years the testator suffered from epileptic dementia, during which time he had frequent spasms followed by periods of mental derangement, of more frequent occurrence as he grew older, having had a spasm half an hour before signing the will, and the three witnesses to the will, one of whom was intimately acquainted with him, and the expert witnesses, physicians who had examined him, all were of the opinion that he was lacking in testamentary capacity.

Appeal from a judgment of the superior court for Thurston county, Huston, J., entered May 4, 1904, upon findings in favor of the contestant, setting aside the probate of a will, after a trial on the merits before the court without a jury.   Affirmed.

*Vance & Mitchell,* for appellant.   The evidence of subscribing witnesses discrediting a will should be received with gravest suspicion. *Stevens v. Leonard,* 154 Ind. 67, 56 N. E. 27, 77 Am. St. 446; *Perkins v. Perkins,* 39 N. H. 163; *Thornton's Ex'rs v. Thornton's Heirs,* 39 Vt. 122; 29 Am. & Eng. Ency. Law (1st ed.), 203; *Will of*

[1]Reported in 80 Pac. 433.

*Cottrell,* 95 N. Y. 329; *Tarrant v. Ware,* 25 N. Y. 425; *Webb v. Dye,* 18 W. Va. 376; *Abbott v. Abbott,* 41 Mich. 540, 2 N. W. 810; *Rugg v. Rugg,* 83 N. Y. 592; *Stephenson v. Stephenson,* 62 Iowa 163, 17 N. W. 456; *Young v. Barner,* 27 Gratt. (Va.) 96; *Lamberts v. Cooper's Ex'rs,* 29 Gratt. (Va.) 61; *Cheatham v. Hatcher,* 30 Gratt. (Va.) 56, 32 Am. Rep. 650; *Claflin's Will,* 73 Vt. 129, 50 Atl. 815, 87 Am. St. 693; Beach, Wills, § 39; Page, Wills, §§ 223, 374; 2 Jarman, Wills (6th ed), p. 91. Only a moderate degree of testamentary capacity is required. *In re Gorkow's Estate,* 20 Wash. 563, 56 Pac. 385; *Bundy v. McKnight,* 48 Ind. 502; *Chrisman v. Chrisman,* 16 Ore. 127, 18 Pac. 6; *Ames v. Ames,* 40 Ore. 495, 67 Pac. 737; *Luper v. Werts,* 19 Ore. 122, 23 Pac. 850; *Hammond v. Dike,* 42 Minn. 273, 44 N. W. 61, 18 Am. St. 503; *Rice v. Rice,* 50 Mich. 448, 15 N. W. 545; *Waddington v. Buzby,* 45 N. J. Eq. 173, 16 Atl. 690, 14 Am. St. 706; *Bannister v. Jackson,* 45 N. J. Eq. 702, 17 Atl. 692; *Clapp v. Fullerton,* 34 N. Y. 190, 90 Am. Dec. 681; *Brown v. Riggin,* 94 Ill. 560; *Schneider v. Manning,* 121 Ill. 376, 12 N. E. 267; *Middleditch v. Williams,* 45 N. J. Eq. 726, 17 Atl. 826, 4 L. R. A. 738. The appointment of a guardian is not inconsistent with testamentary capacity. *Rice v. Rice,* and *Ames v. Ames, supra.* The testimony of physicians is of no special value. *Will of Blakely,* 48 Wis. 294, 4 N. W. 337.

*Frank C. Owings* and *Troy & Falknor,* for respondent, upon the subject of testamentary capacity, cited: Page, Wills, § 97; 1 Underhill, Wills, §§ 87, 112; Schouler, Wills (3d ed.), §§ 68, 71, 111, 115, 189; *Bever v. Spangler,* 93 Iowa 576, 61 N. W. 1072; *Dale's Appeal,* 57 Conn. 127, 17 Atl. 757; *Ross v. McQuiston,* 45 Iowa 145; *Shailer v. Bumstead,* 99 Mass. 112; *White Memorial Home v. Haeg,* 204 Ill. 422, 68 N. E. 568. The appointment of a

guardian establishes a prima facie case of incompetence. *Estate of Johnson,* 57 Cal. 529; *Harrison v. Bishop,* 131 Ind. 161, 30 N. E. 1069, 31 Am. St. 422; *Fenton's Will,* 97 Iowa 192, 66 N. W. 99; *Rice v. Rice,* 50 Mich. 448, 15 N. W. 545; *Hamilton v. Hamilton,* 10 R. I. 538. The opinion of attending physicians is practically conclusive. Schouler, Wills (3d ed.), §§ 119, 133, 204; 1 Underhill, Wills, § 100; *Richardson v. Moore,* 30 Wash. 406, 71 Pac. 18; *Cheatham v. Hatcher,* 30 Gratt. (Va.) 56, 32 Am. Rep. 650; *Fairchild v. Bascomb,* 35 Vt. 398.

FULLERTON, J.—One Horatio Hartley died testate, in Thurston county of this state, on the 21st day of January, 1903. On the 4th day of May, 1903, a document purporting to be the last will and testament of said deceased was admitted to probate in the superior court of said county, and C. J. Lord was appointed executor thereof. Thereafter Mary Ann Hartley, widow and next of kin to said deceased, filed a contest, praying that the probate of said will be annulled and revoked, for the reason, among others, that, at the time said purported will was executed, the testator was of unsound mind, and wholly incapable of making a will or other valid disposition of his property. The executor, and all persons interested in the estate, were brought in by citation, and a hearing was had on the petition to revoke the probate of the will and the issues framed thereunder. At such hearing the court found:

"That said document purporting to be the last will and testament of the said Horatio Hartley, and admitted to probate as aforesaid, is not the last will and testament of Horatio Hartley, or any will whatever, and is invalid and void for the reason that, at the time the said Horatio Hartley purported to execute the same, and for a long time prior thereto, he was of unsound mind and mentally deranged, and wholly incapacitated from making a will or

valid disposition of his property, and was wholly lacking in testamentary capacity."

A decree was thereupon entered, revoking and annulling the will, and the probate thereof. From this decree the executor has appealed.

The question of the testamentary capacity of the testator, at the time of the execution of the alleged will, is the only question presented on this appeal. Few questions presented to courts of justice give rise to greater difficulty than the one of testamentary capacity, especially in cases like the present where the process of mental decay is at work through a long series of years, and where the mind is continually, though imperceptibly, growing weaker. At the two extremes, unimpaired mental capacity and complete mental imbecility may be perfectly apparent, yet the precise point where reason yields to unreason is most difficult of ascertainment.

It appears from the testimony in this case that the deceased suffered from epilepsy, or epileptic dementia, for at least fifteen years prior to the execution of the will in controversy. During these years he had frequent spasms, followed by brief periods of mental derangement. As he grew older these spasms were of more frequent occurrence, and the ensuing mental derangement was more pronounced. He had one of these spasms not to exceed half an hour before he signed this alleged will. For some years prior to April 21, 1897, the deceased never left home unless accompanied by some person to watch over and look after him.

At the time of the execution of the will, three persons were present, the two subscribing witnesses, and one Richard Carpenter, a beneficiary under the will. These three witnesses were of opinion that the testator was of unsound

mind, and incapable of making a valid will or other dispo-
sition of his property at the time the purported will was
signed, and gave the reasons upon which such opinions
were based.   It is true, as claimed by counsel for appel-
lant, that the subscribing witnesses to a will certify, by
implication at least, that the testator is of sound mind and
otherwise capable of making a will, and that their testi-
mony is viewed with suspicion when they come into court
to overthrow the will on the ground of mental incapacity.
The fact that the witness Carpenter and the two subscrib-
ing witnesses went through the idle formality of preparing
a will for a decrepit old man, at an expense of $25, when
in their opinion the will was utterly worthless, cannot be
overlooked.   But their conduct in this regard must be
viewed in the light of all the surrounding circumstances.
The witness Carpenter testified that the deceased impor-
tuned him almost daily to take him to town to make his
will, both before and after the alleged will was signed, and
it was to satisfy this desire or whim that he did so.   This
witness had far better opportunities to observe and know
the mental condition of the deceased than any other non-
expert witness who testified at the trial.   He had been with
him almost daily for years.   The deceased reposed great
confidence in him, and there is nothing in the record to
show that this confidence was misplaced or abused.   It
does not appear that he has any interest in the result of
this controversy, or that he has any ulterior object in view.
The direct effect of the judgment below, based in part on
his testimony, was to deprive him of a legacy of $2,000.
It is true, he had the assurance of the widow that he would
lose nothing through a contest of the will, but it does not
appear that he will be the gainer thereby.   The testimony
of these witnesses was corroborated in a measure by others
whose testimony we will not review.

In addition to the testimony of the nonexpert witnesses, there was the testimony of four physicians, who had examined the deceased, some shortly before, some shortly after, and some near the time of the execution of the alleged will. These witnesses were wholly disinterested, and some of them at least had very considerable experience in cases of insanity. Their opportunity for knowing the mental condition of the deceased, aside from their knowledge and experience, was fully as great as that of many of the nonexpert witnesses. They all concurred in the view that the deceased was utterly lacking in testamentary capacity at the time they examined him. When we consider that there is no question of lucid intervals involved in this case, that the disease was incurable, and daily growing worse, the testimony of these experts is entitled to great consideration.

As against the testimony of the witnesses above referred to, we have the testimony of some four or five persons who were more or less intimately acquainted with the deceased for a number of years. These witnesses saw the deceased from once a week to three or four times a year, for a period extending over a number of years. From talking with the deceased about some small business matters, these witnesses, all non-experts, were of opinion that he had sufficient mental capacity to enable him to make a will or other valid disposition of his property.

The rule of testamentary capacity is that the testator must have sufficient mind and memory to intelligently understand the nature of the business in which he is engaged, to comprehend generally the nature and extent of the property which constitutes his estate, and which he intends to dispose of, and to recollect the objects of his bounty. Underhill, Wills, § 87; Schouler, Wills (3d ed.), § 68.

We fully concur with the court below, that Horatio

Hartley was lacking in these requirements. The judgment is therefore affirmed.

MOUNT, C. J., HADLEY, and DUNBAR, JJ., concur.

RUDKIN, ROOT, and CROW, JJ., took no part.