[No. 6465. Decided December 15, 1906.]

*In the Matter of the Estate of* JACOB RATHJENS, *Deceased.*
AMELIA RATHJENS, *Appellant,* v. F. S. MERRILL *et al.,*
*Respondents.*[1]

WILLS — CAPACITY — EVIDENCE — SUFFICIENCY. Where there was ample testimony that the testator was sane at all times and rarely intoxicated, and that he was both sane and sober at the time of the execution of the will, a finding of testamentary capacity will not be disturbed on appeal although there was conflicting testimony to the effect that he was frequently intoxicated and insane at intervals.

SAME—CAPACITY AND UNDUE INFLUENCE—EVIDENCE—SUFFICIENCY. There is sufficient evidence to support findings of testamentary capacity and want of undue influence in the making of a will, revoking a will made seventeen days before in favor of the testator's wife, where it appears that the husband and wife were estranged, that divorce suits had been instituted with charges and countercharges, that she refused to respond to his repeated appeals for a reconciliation, that the beneficiaries in the will were miles away for two months immediately preceding the execution of the will, and that just before committing suicide, the testator left a note declaring that he was about to kill himself on account of his wife, and to will his property to his friends.

[1]Reported in 87 Pac. 1070.

SAME—CONTEST—COSTS—ALLOWANCE OUT OF ESTATE. The unsuccessful contestant of a will, who claimed the estate under another will, is not entitled to an allowance out of the estate for costs of the contest, either in the lower or appellate court.

Appeal from an order of the superior court for Spokane county, Kennan, J., entered February 8, 1906, dismissing on the merits a contest of a will. Affirmed.

*A. C. Shaw* and *John C. Kleber*, for appellant.

*Graves, Kizer & Graves*, for respondents.

RUDKIN, J.—This is an appeal from an order dismissing a will contest. A sufficient statement of the case will be found in the opinion of this court on a former appeal, where a judgment of nonsuit was reversed. *Rathjens v. Merrill*, 38 Wash. 442, 80 Pac. 754. The grounds of the contest were undue influence and want of testamentary capacity, resulting from intemperance and insanity. No claim of a general lack of testamentary capacity was advanced by the appellant at the trial. Indeed, her own conduct precluded her from advancing any such claim, inasmuch as the testator executed a will in her favor only seventeen days before the execution of the will now under contest, and that will she caused to be probated, proving to the satisfaction of the court that, at the time of its execution, the testator was of sound and disposing mind and memory. It was practically conceded, therefore, that the testator was sober at times, and had lucid intervals during which he had sufficient mind and memory to enable him to comprehend the nature and extent of his property and to recollect the objects of his bounty. Much testimony was offered at the trial tending to show the habits and mental condition of the deceased. The witnesses on the part of the appellant testified that he was generally intoxicated, that his looks and actions were strange and peculiar at times, and that, in their opinion, he was insane. On the other hand, witnesses on the part of the respondents, who had known the

deceased intimately for years prior to his death, testified that he was sound of mind and temperate in his habits. A review of this conflicting testimony would serve no useful purpose, and we content ourselves by simply announcing our conclusion that the finding of the court on the question of testamentary capacity is fully sustained by the testimony. There was testimony tending to show that the testator was sane at all times, and was rarely if ever intoxicated; and if we were to concede that he was intoxicated and insane at intervals, yet, there is ample testimony to show that he was both sane and sober at the time of the execution of this will.

The charge of undue influence on the part of the respondents and the brothers of the respondent Weise finds its chief support in the fact that those parties espoused the cause of the deceased in a divorce proceeding instituted against him by the appellant some two years before his death, and made affidavits in his behalf. There was testimony also—some of it from doubtful sources—tending to prove declarations and statements alleged to have been made by the deceased, by the respondents, and by the brothers of the respondent Weise, in relation to the property of the deceased. The making of such statements is denied, except the statements attributed to the deceased, and it is a significant fact that in all his letters to the appellant, in which he deplored their estrangement and separation, the deceased never so much as referred to his brothers-in-law as the authors of his woes. But the conduct of the deceased himself, both before and after the execution of the will in controversy, here rebuts even the slightest inference of undue influence. He was in Davenport, miles away from those who are alleged to have influenced his acts and conduct, for the greater part of the two months immediately preceding the execution of this will. He left Davenport for Spokane, declaring to some of his friends that he was going to execute a will in favor of the respondent Weise, to others that he was going to will his property to his

friends. In the note written immediately before inflicting the wound which afterwards resulted in his death, and which he doubtless intended as his last communication in life, he declared that he was about to shoot himself on account of his wife, that all she was after was his property, that she thought he was so dumb that he did not know it, and that all his property was for the respondent Weise. Between the time he received his mortal wound and the time of his death, some weeks thereafter, he repeatedly declared that he had willed his property to the respondent Weise, and expressed satisfaction with the disposition made.

Counsel argue that the fact that the deceased made two wills within a period of seventeen days, naming different devisees, is evidence of mental incapacity or undue influence. It might be convenient to attribute a change of mind which cannot be otherwise satisfactorily accounted for to insanity, drunkenness or undue influence, but this we are not at liberty to do. We know not what hopes or promises may have induced the deceased to execute the will in favor of the appellant. If we did, the mystery surrounding the change of beneficiaries might be solved. Again, it is argued that it is unnatural that the husband should disinherit the wife, in view of the number and character of the letters written to her within the few months preceding his death. The answers to these letters, or a failure to respond to his repeated appeals for a reconciliation, might afford some explanation of a change of mind and heart. It is impossible to read the record in the first divorce suit, with its charges and countercharges, the record in the second divorce suit, the threat from the attorney for the appellant to the deceased a few days before his death, that if he did not obtain a decree of divorce from the appellant in the pending suit she would amend her answer and pray for one, the note written by the deceased at the time of his attempt to commit suicide, and then declare that the conduct of the deceased was either unseemly or unnatural.

Lastly it is contended that the court erred in not allowing the appellant her costs in the court below. Conceding that a court may, in its discretion allow an heir, who unsuccessfully contests his ancestor's will, costs out of the estate, yet in this case, where the appellant claimed under one will and the respondents under another, the court properly declined to award costs to the unsuccessful contestant. For a like reason, her prayer for costs in this court is disallowed.

The judgment of the court below is free from error, and should be affirmed, and it is so ordered.

HADLEY, FULLERTON, and CROW, JJ., concur.

MOUNT, C. J. and DUNBAR, J., took no part.