[No. 19512. Department Two. February 2, 1926.]

*In the Matter of the Estate of* DAVID VAUGHN, *Deceased.* GWEN VAUGHN, *Appellant,* v. H. H. MARSHALL, *Respondent.*[1]

[1] WILLS (7)—TESTAMENTARY CAPACITY—WEIGHT AND SUFFICIENCY OF EVIDENCE. Findings that a decedent was possessed of testamentary capacity at the time he made his will are sustained, where the evidence is clear that he attended to his business to the satisfaction of his associate directors, and to other affairs, down to and including the date of the execution of the will, and witnesses testified that his mind was clear and normal and that he gave from memory correct descriptions of many different tracts of land held by him in different counties.

[2] WILLS (13)—VALIDITY—ATTESTATION—SUFFICIENCY. A request by a testator that a person present sign as a witness may be inferred from his acquiescence, upon introduction to him for that purpose, especially where the other witness testified that he answered "yes" when asked if he desired it.

[3] WITNESSES (55)—PRIVILEGED COMMUNICATIONS—INFORMATION ACQUIRED BY PHYSICIAN. In a will contest, it is not prejudicial error to exclude, as privileged, the testimony of a physician as to a physical ailment of the decedent some years previously, where he testified as to his mental condition at the time of the execution of the will, and as to what, if any, effect the previous physical condition had upon his mental condition at the date of the will.

[4] WILLS (28)—PROBATE—CONTEST—WAIVER OR ESTOPPEL BY PROCEEDING. The right to administer community estate will not be decided in a will contest, where the surviving wife contested the will without asserting any community interest, having waived for the time being her application to be appointed administratrix.

[5] WILLS (51)—CONTEST—COSTS—LIABILITY OF WIFE AS CONTESTANT. It is proper to tax the costs of a will contest against the unsuccessful claimant who presented the issues and caused the expense of the trial.

Appeal from an order of the superior court for Walla Walla county, Mills, J., entered February 13, 1925,

[1] Reported in 242 Pac. 1094.

upon findings in favor of the proponent of a will, after a contest tried on the merits to the court. Affirmed.

*Chas. W. Johnson* and *Evans & Watson,* for appellant.

*Rader & Bean,* for respondent.

MITCHELL, J.—David Vaughn died on December 8, 1924, in and a resident of Walla Walla county, leaving surviving him his wife, Gwen Vaughn, but no descendant. On December 30, 1924, H. H. Marshall presented to the superior court of that county a petition for the probate of an instrument dated October 8, 1924, purporting to be the last will and testament of David Vaughn. The petitioner was nominated in the instrument as executor. On the same day, the widow duly filed her verified petition for letters of administration, and, by allegations in the petition that the purported will of October 8, 1924, was not a will, on account of mental incapacity of the decedent to make a will and also because of undue influence and fraudulent representations inducing him to execute it, she protested and objected to the admission of the instrument as the will of the decedent. The issues thus presented were tried by the court without a jury. In the trial of the case, the proponent of the will assumed the burden of proof. Altogether, a very considerable amount of evidence was introduced, upon the consideration of which the trial court admitted the instrument to probate as the last will and testament of the decedent, and appointed H. H. Marshall as executor. Mrs. Vaughn has appealed.

[1] The first contention on behalf of the appellant is, that the decedent did not possess testamentary capacity. Any definition of testamentary capacity is more or less arbitrary, and subject to revision or modi-

fication as new combinations of fact arise. However, in the case of *Hartley v. Lord,* 38 Wash. 221, 80 Pac. 433, it was said:

"The rule of testamentary capacity is that the testator must have sufficient mind and memory to intelligently understand the nature of the business in which he is engaged, to comprehend generally the nature and extent of the property which constitutes his estate, and which he intends to dispose of, and to recollect the objects of his bounty. Underhill, Wills, § 87; Schouler, Wills (3d ed.), § 68."

In the application of that rule to the facts in this case, we find it to be unnecessary to attempt to present in detail, even in concise form, the vast amount of evidence bearing upon this point. It may be stated, generally, that the decedent, during a number of years prior to his death at the age of sixty-four years, had been frequently under the care of physicians and surgeons, and there is evidence of conduct on his part which suggests that, at occasional short periods of time during those years, his mind lacked that balance to be found in the common and ordinarily normal mind with reference to the question of testamentary capacity. On the contrary, the evidence is clear, that for years he had attended to his business as a banker to the satisfaction of his associate directors and without observation on their part of anything out of the ordinary; that he attended to his other business affairs of rather large proportions in the usual manner, down to and including the day the will was executed at the hospital, where he had been taken on that day preparatory to an operation the next morning. His lawyer, who wrote the will upon request of the decedent, attendants at the hospital, the persons who took him to the hospital from his home, and his physicians all testified that his mind was clear and normal at the time,

so that upon this question, that is the mental condition of the decedent at the time of executing the will, the trial judge said:

"The evidence scarcely rises to the dignity of a suggestion that the testator did not know the nature of the business in which he was engaged. Beyond question he knew he was making his will and disposing of his property in the event of his death. In the briefs of objector, it is not suggested that the testator did not comprehend generally the nature and extent of the property which constitutes his estate. The contrary is abundantly proven. No object of his bounty was forgotten. Ties of blood and marriage were in his mind. If there is any criticism by the objector in this respect, it is that the testator remembered too much rather than too little."

By the terms of his will he gave the great bulk of his estate, estimated at approximately one hundred thousand dollars, to his wife and his sister; and it may be noticed in this connection that, on the occasion of his making the will, he gave from memory the correct description (with one or two exceptions) as shown by the title deeds of some twenty-eight different tracts of land belonging to him situated in different counties, the descriptions being written down at that time by his attorney and kept for another business purpose.

Upon consideration of all the evidence, we fully agree with the trial court that the decedent possessed testamentary capacity at the time of executing the will.

[2] The next assignment of error is, that the will was not witnessed in the manner required by statute. While no such objection was mentioned in the pleadings, some testimony was introduced on this subject. The argument refers to only one of the witnesses, Buelah F. Jones, a nurse at the hospital. It appears that, upon completing the writing of the will and reading it to Mr. Vaughn, his attorney, being assured

by the testator that he could read it himself, left it with him for that purpose, while the attorney went out to get another witness. Buelah F. Jones was obtained for that purpose. She testified that the attorney asked her if she would witness a will; that she said she would; that they went into the room and that the attorney said to Mr. Vaughn, "This is Miss Jones, one of the nurses, who will witness the will;" that Mr. Vaughn said, "Jones?", and she said, "Yes, possibly you know my uncle Mr. J. S. Jones who has lived here many years;" that he made no reply, and that then Mr. Vaughn signed the instrument, and she and the attorney signed as witnesses, all in the presence of each other. She further testified: "I don't recall you asking him if he wanted us to sign it as witnesses. I recall that you said 'This is Miss Jones, who will act as a witness'." Counsel, in his argument, calls attention to the provision of §1395, Rem. Comp. Stat., which says that

"Every will . . . shall be attested by two or more competent witnesses, subscribing their names to the will in the presence of the testator by his direction or request."

The argument is that, because the proof does not show that the testator, in so many words, "directed or requested" the witness to sign, therefore the attestation was insufficient. The other witness testified that he asked the testator if he wanted Miss Jones and himself to act as witnesses, and that the testator answered "Yes." Considering the transaction upon the testimony of both witnesses, or that of Miss Jones only, the contention of the appellant cannot prevail, under the authority of *In re Adams' Estate*, 120 Wash. 189, 206 Pac. 947; *Points v. Nier*, 91 Wash. 20, 157 Pac. 44, Ann Cas. 1918A 1046; Schouler on Wills (5th ed.), vol. 1, § 512. Request that a witness should attest and

subscribe may be inferred from acts and conduct of the testator, as well as his express words; the law taking notice of substance, rather than literal form, in such matters.

[3] It is claimed error was committed in allowing a physician, while testifying, to claim as privileged certain information acquired by him several years ago, while rendering professional services to Mr. Vaughn. The matter does not appear to be of much importance. The physician testified, with more or less detail, of his services at the time referred to, and especially with reference to Mr. Vaughn's mental condition. There was a question, with reference to the bodily ailment of Mr. Vaughn, that the physician preferred not to answer, and we do not understand that counsel ultimately insisted upon a direct answer to that specific question. However, it does appear that this physician, who saw and conversed with the testator on the day the will was executed and with whom he was well acquainted, did testify, in answer to questions on behalf of the appellant, as to what, if any, effect the physical condition of the testator several years before, as found by the physician, had upon his mental condition at the date of the will. This was the ultimate and effective inquiry, and we think there was no error in this respect.

[4] Another assignment of error arises, on the contention that the appellant was entitled to administer upon the community property, notwithstanding the will. Section 1419, Rem. Comp. Stat. This feature of the controversy has heretofore been considered by us. *State ex rel. Vaughn v. Superior Court,* 135 Wash. 202, 237 Pac. 301, and, if not fully decided against the appellant in that case, we must so decide at this time. Nothing new in this respect has been presented, since the making of the record as it was considered by us

in the other case. No such contention or petition was made by the appellant in the lower court—her contention being that there was no will, and that, therefore, she was entitled to letters of administration on the whole estate as a surviving spouse. We may say that we have not made nor do we intend, any adjudication as to the character of the property, whether community or separate; but have referred to it, in that respect, only for the purpose of disposing of the questions raised under the pleadings of the parties and the theory upon which the case was tried.

[5] Finally, it is claimed that the trial court erred in taxing costs against the appellant, on dismissing her petition and objections to the probate of the will. She presented the issues and caused the expense of the trial. We see no reason why she should not be taxed with costs as any other unsuccessful litigant.

While appellant's objections to the probate of the will alleged undue influence, and fraudulent representations inducing the testator to execute the will, those charges were evidently abandoned at the trial, because it appears that no evidence was introduced tending to establish those allegations.

Affirmed.

TOLMAN, C. J., MAIN, PARKER, and MACKINTOSH, JJ., concur.