[No. 27832. *En Banc.* April 25, 1940.]

*In the Matter of the Estate of* ROBERT JOLLY,
*Deceased.*[1]

[1]Reported in 101 P. (2d) 995.

**616**

*Thos. G. Jordan* and *J. C. McCoy,* for appellant.

*Edgar P. Reid,* for respondent and cross-appellant.

ROBINSON, J.—Robert Jolly, a resident of Kelso, Cowlitz county, died on July 12, 1937. A will, executed by the decedent on January 13, 1937, was filed for probate on July 13th by the executor nominated therein, John F. McCarthy, an attorney practicing in Kelso. This will devised the real property, consisting of three lots, to three different devisees. One of the lots was devised to James D. Grose, Jr., a grandson of testator's deceased wife, and he was given the residue of the estate. This would include, among other things, about four thousand seven hundred dollars worth of bonds and postal savings certificates. The instrument was decreed to be the last will and testament of Robert Jolly on July 14th, and it was ordered that letters testamentary be issued to McCarthy, as executor, upon the filing of his oath and a bond in the sum of five thousand dollars.

Prior to his offering the will for probate, Mr. McCarthy had heard a rumor that there was another and later will outstanding, and there is evidence, although directly disputed, that he was definitely informed concerning it on July 13th, the day he filed the will for probate and the day before the order probating the will and appointing the executor of the estate was entered. Whatever the fact may be about that, it is certain that Mr. McCarthy took no immediate steps to disturb the *status quo* by qualifying and taking possession of the decedent's property.

On August 7th, Thomas Garrett came into the matter by filing a pleading entitled: "Petition to Revoke Pro-

bate of Will and for Probate of a Later Will." This petition pleaded, and attached as an exhibit, an alleged will of Robert Jolly, purporting to have been executed on May 13, 1937, just four months later than the will which had already been probated. By its terms, a total sum of four hundred and forty dollars in cash was bequeathed to four several legatees, and all the rest and residue of the estate was devised and bequeathed to Thomas Garrett. The prayer of Garrett's petition was that the probate of the first will be revoked and the will annulled; that the appointment of McCarthy as executor be revoked; that the instrument attached to the petition be admitted to probate; that letters testamentary be issued to the petitioner; and that McCarthy, named as executor in the former will and appointed by the court, and all legatees and devisees named in that will, be cited to show cause why the petition should not be granted. The citation was issued as prayed for.

In response to Garrett's petition and order to show cause, McCarthy and Grose appeared and filed an answer, consisting of denials and, also, of affirmative matter to the effect that Robert Jolly was not competent to make a will on May 13, 1937, and that he was unduly influenced by the petitioner and his wife. The affirmative matter was denied by reply, and the petition to revoke and annul the first will came on for hearing on November 17, 1937. The trial judge called a jury to assist him in the matter, and, at the close of a long trial, after instructing the jury at length, required an answer to the following interrogatory:

"Did Robert Jolly on the 13th day of May, 1937, at the time he signed the will dated that date have mental capacity sufficient to make a last will and testament as defined in the instructions given to the jury?"

To this question, the jury, on November 24th, answered: "No." An alternative motion for judgment notwithstanding the verdict or for a new trial was not disposed of until early in the following April. On April 9, 1938, the court accepted the finding of the jury, giving its reasons for doing so and entering an order, as follows:

"On the question of mental capacity of the said Robert Jolly, deceased, to make a last will and testament at the time he in fact signed said document dated May 13, 1937, purporting to be his last will and testament, as aforesaid, the court feels there are so many elements in the case that he would not be justified in disturbing the finding of the jury and therefore accepts the finding of the jury as to the lack of mental capacity of the said decedent to make his alleged last will on May 13, 1937, WHEREFORE,

"It Is HEREBY ORDERED, ADJUDGED and DECREED that the petition of Thomas Garrett to annul the will herein dated January 13, 1937, and to revoke the probate thereof, and to revoke the order heretofore made and entered by the Court herein appointing John F. McCarthy as the executor herein, and to admit the alleged last will of said Robert Jolly, deceased, dated May 13, 1937 to probate, and to issue letters testamentary thereon to said petitioner, be and the same is hereby denied and that this action be and it is hereby dismissed. Neither party shall recover costs."

The will which he had probated and of which he had been appointed executor having thus survived the attempt of Garrett to have it revoked, McCarthy now formally qualified as executor by filing oath and bond in the sum of five thousand dollars. Garrett thereupon appealed to this court. Upon a consideration of the appeal, the court, having in mind the presumptions which favor a will executed in due form, and the kind of evidence and the quantum of proof necessary to show the incompetency of the maker, concluded that

the jury's answer to the question put to it by the court was incorrect, and that the court erred in accepting its verdict. *In re Jolly's Estate*, 197 Wash. 349, 85 P. (2d) 267. The remittitur went down on January 16, 1939.

The filing of this remittitur, of course, brought McCarthy's term as executor to an end. On January 17th, he filed his report, in which he set up expenses and disbursements amounting to $130.85. The largest item of this was $50, paid for his qualifying bond; the next in amount was $37.48, for printing his brief on the appeal to this court; the next, the jury fee of $12, on the hearing of Garrett's petition to revoke; the balance is, principally, with the exception of $6.20 witness fees, clerk's fees for filing petition for probate, and other such charges. In addition to reimbursement for these expenditures, McCarthy asked an allowance of $250 as executor's fees, and set up that he had become indebted to Edgar P. Reid for $1,100 in attorney's fees, this total being broken down as follows: Preparation for trial of Garrett's petition, $150; five days' trial, $500; preparation for argument of Garrett's post trial motions and day spent in argument thereof, $200; preparation of brief for supreme court, $150; oral argument in supreme court, $100.

Garrett, in due course, filed objections to each and all of the expenses and disbursements, except the five dollars paid for filing the petition to probate the will, and further objected to any allowance whatever with respect to executor's or attorney's fees, on the ground that nothing whatever was done or performed, either by the executor or his attorney, for the benefit of the estate, but all for the benefit of McCarthy and Grose. He also alleged that McCarthy had acted in bad faith in probating the will on July 14th and in subsequently resisting Garrett's petition to have it revoked.

Before the court passed upon this report, Garrett

had been duly installed as executor of the estate. After taking testimony and hearing the argument of the parties, the court held that McCarthy had, in all things, acted in good faith and upon reasonable and probable cause, approved the claimed expenditures, held that McCarthy and Grose should be reimbursed out of the estate as to the costs allowed against them in the supreme court, and that McCarthy was justified in employing an attorney to resist Garrett's attempt to revoke the will in which he had been nominated as executor. The court, however, allowed McCarthy $100 as an executor's fee, instead of the $250 as prayed for, and with respect to attorney's fees, $400 instead of $1,100. These findings and conclusions were embodied in a decree and order entered on May 27, 1939. Garrett, as executor, has appealed from that decree and order and in this court contests all the allowances made therein. McCarthy cross-appeals, alleging that the court erred in not allowing him $250 as executor's fees and $1,100 with respect to attorney's fees.

The appellant contends that the controversy between himself and McCarthy was a will contest, within the purview of subd. V, entitled "Will Contests," of chapter 156, Laws of 1917, p. 646, known as the probate code. This subdivision contains five related sections, and they appear in Remington's Revised Statutes as §§ 1385-1389 [P. C. §§ 10017 to 10020a], inclusive. The last of these sections relates to costs, and reads as follows:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court may assess the costs against the contestant, which costs may in the discretion of the court include a reasonable attorney's fee."

The appellant further contends (1) that, within the meaning of this section, McCarthy was an unsuccessful

"contestant"; and (2) that the section not only does not give a trial court authority to award costs to an unsuccessful contestant, but, on the contrary, provides that costs may be awarded against him, including attorney's fees.

As we have seen, § 1389 [P. C. § 10020a] is not a general statute relating to costs, but only to costs in such a proceeding as is described in the four preceding sections. We must, therefore, examine those sections in order to determine to what sort of a litigant the word "contestant," as used in the last section of subd. V, "Will Contests," refers. We quote portions of those sections:

§ 1385 [P. C. § 10017]. "If any person interested in any will shall appear within six months immediately following the probate or rejection thereof, and by petition to the superior court having jurisdiction contest the validity of said will, . . . he shall file a petition containing his objections and exceptions to said will, . . ."

§ 1386 [P. C. § 10018]. "Upon the filing of the petition referred to in the next preceding section, a citation shall be issued to the executors who have taken upon themselves the execution of the will, . . . and to all legatees named in the will . . ."

The next and third section refers to the burden of proof and will be quoted later.

The fourth section reads, in part, as follows:

§ 1388 [P. C. § 10020]. "If, upon the trial of said issue, it shall be decided that the will is for any reason invalid, or that it is not sufficiently proved to have been the last will of the testator, the will and probate thereof shall be annulled and revoked, and thereupon and thereafter the powers of the executor or administrator with the will annexed shall cease, but such executor or administrator shall not be liable for any act done in good faith previous to such annulling or revoking."

From what has been said in stating the case, it is clear that McCarthy filed no petition to contest a probated will, issued no citation, sought no revocation or annulment of a probated will, and procured none. He merely appeared in response to appellant's show cause order, as commanded to do by the court's citation. The appellant, on the other hand, did all of these things. A will had been admitted to probate. He came in and filed a petition to revoke the probate and annul the will, in the manner provided for in § 1385. He procured the issue of a citation to the executor and the legatees, as directed by § 1386. He, in our opinion, was the contestant. In the end, he secured the relief provided for by § 1388, that is, the revocation of the probate and the annulment of the probated will which he had attacked. If, then, § 1389 controls the matter of costs, as appellant contends, that matter was within the discretion of the court, since the first sentence of the section reads, as follows:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court."

But it is said that, after all, the appellant's will proved to be the true will of the decedent. This is true; but the important and determinative thing is that, during the entire contest and until this court rendered its opinion on December 14, 1938, the will executed on January 13, 1937, and admitted to probate on July 14th, was, in the eyes of the law and, in part, by virtue of the very statute the appellant invokes, the legal will of the decedent. The second section preceding § 1389 reads, in part, as follows:

"In any such contest proceedings the previous order of the court probating, . . . such will shall be prima facie evidence of the legality of such will, if probated, . . . and the burden of proving the ille-

gality of such will, if probated, . . . shall rest upon the person contesting such probation . . ." Rem. Rev. Stat., § 1387 [P. C. § 10019].

The probated will was, of course, *prima facie* valid because of the very fact that it had been probated; and, as we have seen, the superior court of Cowlitz county found that the contestant Garrett, in attempting to revoke the probate, failed to meet the burden imposed by the statute, and sustained the validity of the will as against his attack. That will, therefore, remained the true will in the eyes of the law until this court reversed the lower court in December, 1938.

It follows from the facts hereinbefore stated that, during the early part of the contest period and until he filed his bond on April 29, 1938, McCarthy was, in the eyes of the law, a *de facto* executor. He was cited into court as executor, and Garrett's notice of appeal was served upon him as executor on April 19, 1938. After April 29th and during the remainder of the contest, he was the duly qualified and lawful executor of the will of Robert Jolly, and remained so until the judgment and decree of the superior court was set aside by this court.

It will be noticed that it is provided in § 1388 that, if a probated will be revoked, the powers of an executor shall at once cease, "but such executor . . . shall not be liable for any act done in good faith previous to such annulling or revoking."

We are of the opinion that the matter of costs was within the discretion of the trial court, and that the trial judge correctly analyzed the problem when he said, in his memorandum opinion, that the matter turned wholly upon whether or not McCarthy had acted in good faith. We will address ourselves briefly to that subject.

McCarthy had a will of Jolly's in his possession, and

it was his statutory duty to file the same in court and, when probated, to defend it. *In re Vaughn's Estate,* 149 Wash. 291, [2] 293, 270 Pac. 1030. Jolly was past seventy-four years of age, blind, and for many months prior to his death weak and infirm. McCarthy had acted as his attorney from time to time and, as such, had drawn at least two other wills for him prior to the will of January 13th. When he was called upon to draw that will, he was so doubtful as to Jolly's mental capacity that he refused to do so until Jolly had been examined by a physician. Just prior to Jolly's death, he had been told, by mutual friends in whom he had confidence, that the old gentleman had progressively failed, both physically and mentally, through the early spring of 1937, and they insisted that he was mentally incompetent at dates not far removed from the date of the second will, and, in fact, afterwards so testified at the trial.

There were many other reasons to suspect the validity of that will. Although Jolly had long been completely blind, he was accustomed to sign his name to legal documents. The will which McCarthy drew was so signed on January 13th. There is another legal document in the record so signed on February 2nd. The second will, the Garrett will, was signed, not by name, but by mark. Had Jolly, perhaps, become too weak by May 13th to sign his name? Furthermore, all of his property, except a few individual legacies amounting in the aggregate to $440, was left, by the second will, to appellant Garrett and his wife. The Garretts were no kin to Jolly whatsoever. They had served him as caretaker and housekeeper for about four and one-half months prior to his making the will in their favor on May 13, 1937. Jolly met Garrett for the very first time on December 28, 1936, and his wife, two days later. But it would seem superfluous to pur-

sue this particular matter further, as the jury verdict is, of itself, sufficient to establish McCarthy's good faith.

Appellant's counsel, as hereinbefore stated, strongly insists upon this appeal that McCarthy was the contestant. We may note here, parenthetically, that they did not feel so when the contest was being waged. At the opening of the trial in the superior court, they announced to the trial judge that their client was a plaintiff and, as such, requested and received the privilege of opening and closing. After the five-day trial, they gave notice of the filing of a proposed statement of facts for the purpose of appeal. This notice was directed to McCarthy, Grose, and their attorney Reid, and began as follows:

"You and each of you are hereby notified that the petitioner and contestant herein, Thomas Garrett, desiring to have a statement of facts certified . . ."

Let us assume, for the sake of argument, that they were wrong then and, in spite of what we have said earlier in this opinion, they are right now, and that McCarthy should properly be regarded as the contestant. Upon such an assumption, it is argued that the court has never awarded costs to unsuccessful contestants in will cases, and that, accordingly, this practice has become a fixed and unalterable rule, citing such cases as *In re Vaughn's Estate*, 137 Wash. 512, 242 Pac. 1094, and numerous others of the same general description. But, in such cases, the will was contested because it was alleged to be invalid by reason of undue influence, incompetency, or similar reasons. In such cases, unsuccessful contestants have uniformly been denied costs for a good, sound reason, namely, because to award costs to unsuccessful contestants would be to encourage contests on weak and frivolous grounds.

In this case, if McCarthy be deemed a contestant,

or however he may be designated, labeled, or characterized, no such reason applies. On the other hand, to deny him costs would be to encourage and promote failure of duty. If the rule contended for by appellant be now adopted, then, in the future, an executor in the position in which McCarthy was when he was cited into court, must either default or show cause at his peril, or, having gone to the point to which McCarthy went and prevented the revocation of the will under which he was acting by securing a jury verdict and a judgment sustaining it, in case an appeal should be taken from that judgment, would be compelled to let the appeal go by default or run the chance of never being reimbursed for his own outlays and expenses, to say nothing of having his adversary's costs charged against him if the appellate court should reverse the trial court. Since duty and the law require an executor to defend in such a situation, he should not be required to defend at his peril.

Again assuming, for the purposes of argument, that McCarthy was a contestant, the fact, if it be a fact, that no unsuccessful contestant has ever been allowed costs by a decision of this court, is not determinative. No case exactly like this has been before the court, but similar cases have, apparently, arisen in other jurisdictions. In that one of the three *Vaughn Estate* cases which is reported in 149 Wash. 291, 270 Pac. 1030, the court cited, as authority on a point under discussion, 24 C. J. 100, § 536. That section also deals with the point now under discussion. We quote the portion which is directly pertinent:

"Although the cases are not all in accord, the weight of authority supports the view that . . . a person named as executor in a will which has been admitted to probate is entitled to be reimbursed his counsel fees and expenses in opposing the probate of another paper subsequently propounded as a will, even though the

latter paper is established as the will and admitted to probate."

This, in our opinion, is a reasonable and just rule, if there be added thereto the qualification, "provided it appears that he acted in good faith."

Finally, in concluding the discussion in his reply brief, the appellant includes an argument apparently intended as a *reductio ad absurdum*. It is said:

"Again, let us suppose that Mr. Jordan had succeeded in presenting the true last will, that is, the one of May 13, 1937, to the court and had taken an order admitting it to probate before Mr. McCarthy presented the will of January 13th for probate and that then Grose and McCarthy had contested the last will exactly as they did in this case. Would Mr. McCarthy then contend in the event of his unsuccessful contest of the last will, that he would be entitled to have his attorney's fees and costs and expenses charged against the estate? . . ."

Such a contention by Grose and McCarthy, under the conditions supposed, would be in no way absurd, for it could be supported by quite persuasive authority. In the opinion written by Judge Chadwick in *In re Eichler's Estate,* 102 Wash. 497, 173 Pac. 435, it appears that Eichler, an aged and infirm man, died, leaving a will in which the bulk of his property was left to his housekeeper, a stranger to the blood. The will was probated, and a niece of Eichler's began a contest, setting up that the will was invalid and praying for the probate of an earlier will in her favor; that is, in the *Eichler* case, as in the case supposed by counsel, the will latest in time was the will probated. She lost her contest in the lower court, and costs, including attorney's fees, were assessed against her. On appeal, the court ordered the attorney's fee stricken and the costs of the contest charged against the estate. Quoting the former statute (Rem. Code, § 1313) and the present

statute (Rem. Rev. Stat., § 1389), the opinion says, in part:

"In *Jasinto v. Hamblen,* 79 Wash. 590, 140 Pac. 677, the court met the insistence of counsel that an allowance for attorney's fees and costs to nonsuccessful contestants should be paid out of the estate, by quoting the statute [that is, the then statute, Rem. Code, § 1313] and saying that there was no provision of the code under which the costs and expenses of an unsuccessful contest could be paid out of the estate. The court observed that it was of opinion that neither the law nor good conscience demanded that the unsuccessful contest of a will should result in costs and counsel fees against the estate, advancing the reason that such a ruling would, in effect, place a reward upon the contest of every will disposing of large estates. See, also, *Hunt v. Phillips,* 34 Wash. 362, 75 Pac. 970; *In re Rathjens' Estate,* 45 Wash. 55, 87 Pac. 1070. There is much merit in the observance of the court, but it is evident that the legislature [in enacting the present statute] was not impressed with the reasons given other than its quotation of the statute, for *it is evident that that body foresaw the possibility of a contest that might be meritorious and which in justice the contestant would have a right to wage, although unsuccessful in the end. This case would fall in the latter class, for here we have a situation made entirely by the deceased person. He made two wills, one sustained by the declarations and habit of years and the tie of blood, the other by no sustaining grace other than the cold writing on the page."* (Insertions in brackets and italics ours.)

In any event, since McCarthy was the duly qualified executor of a judicially determined legal will from the time it was so adjudged by the lower court until that judgment was reversed by this court, it would seem that, upon his accounting, he would be entitled to an executor's fee and reimbursement for costs, including attorney's fees providently incurred or expended in

the discharge of his trust. See Rem. Rev. Stat., § 1528 [P. C. § 9790].

As to the cross-appeal, we need only say that the amount of the allowance made with respect to executor's and attorney's fees was within the discretion of the trial court, and that we think, in view of the fact that the services, though faithfully and zealously rendered, were of no ultimate benefit to the estate, that the court's discretion was wisely exercised.

The order and judgment appealed from is affirmed. Since both parties appealed and we hold that neither appeal is well taken, no costs will be taxed in this court in favor of either party.

BEALS, STEINERT, GERAGHTY, and SIMPSON, JJ., concur.

JEFFERS, J., concurs in the result.

MILLARD, J. (dissenting in part)—I am of the view that the cross-appeal is well taken, and that the services rendered were reasonably worth the amounts claimed. If like services were performed by a physician or surgeon, our only concern would be, as we held in *Houda v. McDonald*, 159 Wash. 561, 294 Pac. 249 (see, also, *In re Perry's Estate*, 168 Wash. 428, 12 P. (2d) 595, and *Smith v. Kneisley*, 187 Wash. 278, 60 P. (2d) 14), whether the estate has the assets with which to satisfy the claim. Surely, conceding (as we must) good faith of Mr. McCarthy and Mr. Reid, we should employ as favorable a standard in ascertaining the amount due on cross-appeal. Except for this, I can accept the majority opinion.

BLAKE, C. J. (dissenting)—I am at loss to understand how McCarthy and Grose, by presenting the earlier will for probate, gained such a strategic advantage as to entitle them to recover costs and attorney's fees from

the estate incurred in their unsuccessful attack upon the later will. Nor do I see how their status as contestants of the later will was changed by the fact that they did not file their objections until after a citation was issued. The issue to be kept in mind in this case is that McCarthy and Grose waged an unsuccessful attack upon the *last* will and testament of Robert Jolly. *In re Jolly's Estate*, 197 Wash. 349, 85 P. (2d) 267. They were actually and technically contestants of that will.

Holding to this issue, the present appeal presents to us a very simple problem in statutory construction which I believe to have been determined, contrary to the conclusion of the majority, in a number of cases. To begin with, this court has held in an unwavering line of decisions that the right to recover costs and attorney's fees is "purely statutory." *Meade v. French*, 4 Wash. 11, 29 Pac. 833; *Pierce County v. Magnuson*, 70 Wash. 639, 127 Pac. 302, Ann. Cas. 1914B, 889; *Nelson v. Industrial Ins. Department*, 104 Wash. 204, 176 Pac. 15; *Victor Products Corp. v. Edwards*, 172 Wash. 1, 18 P. (2d) 1045; *Washington Recorder Pub. Co. v. Ernst*, 1 Wn. (2d) 545, 97 P. (2d) 116.

Applying that rule to the unsuccessful contest of a will, the court, in *Jasinto v. Hamblen*, 79 Wash. 590, 140 Pac. 677, said:

"Counsel for the appellants insist that the court erred in not making an allowance for counsel fees and costs to the contestants. The statute, Rem. & Bal. Code, § 1313 [P. C. 409, § 127], with reference to proceedings of this kind, says:

" 'The fees and expenses shall be paid by the losing party. If the probate be revoked or the will annulled, the party who shall have resisted such revocation shall pay the cost and expenses of proceedings out of the property of the deceased.'

"There is no provision of the code which provides that the costs and expenses of an unsuccessful contest

shall be paid out of the estate. And this court has held that costs should not be allowed in such cases. *In re Rathjens' Estate,* 45 Wash. 55, 87 Pac. 1070; *Hunt v. Phillips, supra* [34 Wash. 362, 75 Pac. 970]. Neither in law nor in good conscience do we think the unsuccessful contest of a will should result in costs and counsel fees against the estate. *Such a ruling would, in effect, place a reward upon the contest of every will disposing of large estates.* The trial court properly refused to make such an allowance." (Italics mine.)

This case is, to my mind, controlling of the present controversy, although the statute (Rem. Rev. Stat., § 1389) now reads:

"If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court. If the will be sustained, the court may assess the costs against the contestant, which costs may in the discretion of the court include a reasonable attorney's fee."

As has been frequently said in subsequent decisions, the statute now vests a discretion in the court with respect to costs. But the discretion has very definite limitations, as a casual reading of the statute reveals. The first sentence obviously is designed to permit the taxation of a *successful* contestant's costs and attorney's fees against the estate. But, by its terms, the discretion of the court can be invoked only in case the probate be revoked or *the will annulled.* We have so held. *In re Vaughn's Estate,* 137 Wash. 512, 242 Pac. 1094; *In re McKachney's Estate,* 143 Wash. 28, 254 Pac. 455; *In re Simpson's Estate,* 169 Wash. 419, 14 P. (2d) 1. In the *McKachney* case it is said:

"Contestant further complains that the trial court denied its costs reasonably incurred in the trial. As bearing upon this situation the statute, Rem. Comp. Stat., § 1389, [P. C. § 10020a], says: 'If the probate be revoked or the will annulled, assessment of costs shall be in the discretion of the court.' Here there was

no revoking of the probate nor annulment of the will. The contestant was not entitled to costs. *In re Vaughn's Estate,* 137 Wash. 512, 242 Pac. 1094."

That the second sentence of the statute merely vests the court with discretion to allow or disallow costs *against* an *unsuccessful* contestant seems too plain for discussion. That is the construction put upon it by this court in a number of cases under varying circumstances. When the contest has been waged in good faith and with probable cause, it has been held on the one hand that it was not an abuse of discretion for the court to relieve the unsuccessful contestant from costs, and on the other that it was, under such circumstances, an abuse of discretion to allow costs against him. *In re Eichler's Estate,* 102 Wash. 497, 173 Pac. 435; *In re Hille's Estate,* 117 Wash. 205, 200 Pac. 1034; *In re Fischer's Estate,* 196 Wash. 41, 81 P. (2d) 836. But further than this the court, until now, has not gone.

Believing that the decision in this case finds no warrant in the statute and that it contravenes a salutary public policy which hitherto has been rigidly adhered to by this court, I dissent.

MAIN, J., concurs with BLAKE, C. J.