[No. 31557. Department Two. May 3, 1951.]

*In the Matter of the Estate of* MINNIE CAINE, *Deceased.*
LOVELL FLOYD, *as Administratrix c.t.a., Appellant,*
v. JAMES L. CAINE, *Respondent.*[1]

*Roswell J. Quinn, Mack E. Call,* and *Frank J. Ruff,* for appellant.

*Louis J. Muscek* and *Marshall D. Adams,* for respondent.

ROBINSON, J.—This is an appeal from a probate order of the type provided for in Rem. Supp. 1949, § 1473, for the setting aside of property to a surviving spouse in lieu of homestead.

It appears in the record that Minnie Caine died on October 26, 1949, leaving surviving her husband, James L. Caine, her mother, Margaret S. Thornton, her stepfather, Ralph D. Thornton, her sister, Lovell Floyd, and stepsister, Della Peterson. On October 31, 1949, her surviving husband presented for probate a will, dated January 15,

[1]Reported in 231 P. (2d) 274.

1949, in which he was designated executor. This will was admitted to probate, and he was appointed executor.

On November 18, 1949, there was filed, and on December 7, 1949, her sister, Lovell Floyd, presented for probate, a later will dated October 4, 1949. This will did not designate an executor or executrix. It was admitted to probate, and, the surviving husband stating his intention to contest the will, Lovell Floyd was appointed administratrix of the estate with the will annexed.

On December 19, 1949, James L. Caine filed a petition to contest the October 4th will. That proceeding was still pending at the time the instant matter was argued in this court.

By her last will of October 4, 1949, the decedent disposed of her estate in the following manner:

"Oct. 4, 1949

"My Last Will and Testament:

"To my dear mother Margaret S. Thornton and stepfather Ralph D. Thornton I leave my home and contents and five lots at 7434 So. D. st. Dewy's First Addition, Block 8.

"My personal effects to my sisters Lovell Floyd and Della Peterson.

"To my husband the car and the mountain place near Fairfax, and what plants he wants from the home place.

"The two Insurance policies I have are enough to pay funeral expenses and bills. They must be paid. Prudential Ins. Co. and Metropolitan Life Ins. Co.

"Revoke all other wills made by me previous to this date."

On May 22, 1950, the administratrix filed an inventory and appraisement of the estate of the deceased. On September 30, 1950, she filed a supplemental inventory and appraisement. To reproduce these documents item by item, except two items which will be hereinafter mentioned, would unduly extend this opinion and serve no useful purpose. It will be sufficient to say at this point that, in the first appraisal, the appraisers fixed the total value of the estate at $5,450. One of the items in that inventory and appraisement was as follows:

"Lots Six (6) and Seven (7), Block Eight (8), Dewey's 1st Addition to Tacoma, Pierce County, Washington," appraised at $400.

In the supplemental inventory and appraisement filed on September 30, 1950, the total appraised valuation of the estate was fixed at $5,486.61. An item appeared in the second inventory and appraisement that was not mentioned in the original, to wit, a deposit in the United Mutual Savings Bank of Tacoma, Washington, amounting to $36.61.

In the meantime, on June 12, 1950, James L. Caine, relying on Rem. Supp. 1949, § 1473, filed a petition praying the court to set over to him, as surviving spouse, the following property:

"(1) Lots six (6) and seven (7), Block Eight (8), Dewey's 1st Addition to the City of Tacoma;

"(2) Savings account in the United Mutual Savings Bank, Tacoma, Washington, in the amount of approximately $36.61."

Rem. Supp. 1949, § 1473, is very long and involved. However, its substance was well stated in a single paragraph of our opinion in *In re Poli's Estate*, 27 Wn. (2d) 670, 673, 179 P. (2d) 704, as follows:

"The conditions prerequisite to the award to the surviving spouse of property of the estate in lieu of homestead are [1] that the funeral expenses, expenses of last sickness, and of administration have been paid or provision made for payment, and that [2] the value of the property of the estate which the petitioner prays to be set off as an award in lieu of homestead does not exceed the value of three thousand dollars. [3] A further condition prescribed by the statute (Rem. Rev. Stat., § 1473) is that no homestead has been claimed, either prior or subsequent to the death of the person whose estate is being administered."

The numbers in the foregoing quotation are placed there by us for the purpose of easy reference later in this opinion.

There is a fourth condition created by the proviso in the last three lines of Rem. Supp. 1949, § 1473, which reads as follows:

"*Provided,* That the awards provided for in this section shall not be taken from separate property of the deceased which is otherwise disposed of by will."

In his petition, Caine made numerous allegations designed to meet the prerequisite conditions stated in the foregoing quoted paragraph from our opinion in *In re Poli's Estate.* To meet the first prerequisite, he alleged, in paragraph four of his petition:

"IV. That all funeral expenses, expenses of last sickness and expenses of administration have been paid or provided for."

In her answer to the petition, the administratrix pleaded as to that allegation:

"Denies Paragraph IV of said Petition, and each and every allegation therein contained, and especially denied that the expenses of administration have been paid or provided for; and alleges that the Petitioner, James Caine, has instituted lawsuits in said estate, and that there is no manner of knowing what the expenses of administering said estate may be."

To meet the second prerequisites stated in the paragraph, above quoted from the opinion in the *Poli* case, *supra,* petitioner alleged:

"V. Petitioner further shows that the property requested to be set aside in lieu of homestead herein, does not exceed the value of the sum of $4000.00."

As to that allegation, the administratrix pleaded in her answer to the petition:

"Denies each and every allegation, matter, and thing in Paragraph V of said Petition."

That is a rather strange denial since the only property of the estate which the petitioner prayed to set aside to him was:

"(1) Lots six (6) and seven (7), Block Eight (8), Dewey's 1st Addition to the City of Tacoma;" and

"(2) Savings account in the United Mutual Savings Bank, Tacoma, Washington, in the amount of approximately $36.61;"

and the two lots were appraised at $400 and the savings account at $36.61. Obviously, $436.61 is a long way from exceeding $4,000.

Respondent's petition came on for hearing before a judge of the superior court for Pierce county on June 23, 1950. The petitioner testified that he paid the funeral expenses of the deceased in the sum of $408.97 and $64.38 for a monument out of the proceeds of one of the insurance policies of which he was the beneficiary. On cross-examination of the petitioner, he was asked by appellant's attorney: "Q. You made no arrangements with either Mrs. Floyd, the executrix of the estate or with me for the payment of any expenses in this matter, have you?" To that question petitioner answered, "No." Thereupon appellant's counsel reminded the court that there was no showing by the petitioner that he had provided for the expenses of administration of the estate of his wife, and called attention to the opinion of this court in *In re Armstrong's Estate*, 33 Wn. (2d) 118, 122, 204 P. (2d) 500, which reads, in part, as follows:

"When a surviving spouse makes application for an award and set-off in lieu of homestead pursuant to Rem. Supp. 1945, § 1473, there arises no obligation on the part of such spouse to pay funeral expenses or expenses of administration as a condition precedent to such award and set-off, but before such award and set-off can be made the court must be satisfied that such expenses have been paid or provided for."

Subsequently, the petitioner was asked: "You have made no provision at all for the payment of the expenses of attorney's fees for the probation of this estate?" to which the petitioner replied: "Well, the answer would be no."

Counsel for the estate and the appellant administratrix with the will annexed repeatedly reminded the court that petitioner had not produced any evidence that the expenses of administration had been paid or in any way provided for. He pointed out that the expenses of administration would be considerable, and, in so doing, mentioned his own fees as counsel for the administratrix; whereupon the court said:

"There is plenty of property in the estate to provide for your fees."

A little later the court further remarked:

"The appraisement is $5400 and I am setting over here $436. I can't see why your fees aren't sufficient as provided for in this estate. The fees will be paid before anything else."

and a little later said to counsel:

"It doesn't make any difference what the claims are, your fees are paid first."

To that remark counsel replied:

"That is true enough but then the law specifically provides that the expenses shall be provided for and they are not provided for, neither paid, in any other manner. Now, then, he hasn't any right to come in and set aside what little property his wife did not bequeath to somebody else and say out of her separate property, 'I will take that because it wasn't willed specifically to me or anybody else,' and let the estate go into the bequests which are made to other people to get the expenses of this estate. Now, then, there is no provision and he admits there is no provision and nothing has been paid."

Whereupon the trial judge announced his decision in the matter as follows:

"I think the statute is clear that the surviving husband or surviving wife has the right to four thousand dollars independent of any creditors or anything else, but he has to show that he has paid the attorney's fees in the proceeding that he brings to set over. He has to show that it is paid and usually that ends the estate because it usually takes all the property, and before he can take all the property he has to show that the fees have been paid. But this man is not taking all the property. There is sufficient property here over. The estate can proceed just the same and there is plenty of money to pay, I might say as provided for, because here is $5,000 to pay the fees first and then pay the claimant, and pay whatever claim the court ordered. I would say your fee is provided for because it is all right here. That is sufficient property and this other section here covers setting over separate property if it isn't disposed of by will, so I will set it over, $400 property and $36.61."

A decree granting the respondent's petition was signed and filed on June 23, 1950. The decree contained a number of findings, and among them the following:

"That all funeral expenses, expenses of last sickness and expenses of administration have been paid or provided for."

That finding is challenged on appeal by the following assignment of error:

"The trial court erred in finding that the expenses of administration had been paid or provided for as required by R.R.S., Sec. 1473, 1949 Supplement, to make an award in lieu of homestead."

It is manifest that the foregoing assignment of error is well taken; for, although there is evidence in the record that the funeral expenses of Mrs. Caine have been paid, we find no evidence that the expenses of administration have been paid, and none that they have been provided for. In fact, we cannot see how they could have been paid or provided for; for, to a large extent, their amount is still unknown. As hereinbefore stated, the respondent surviving spouse filed an action to cancel the will of his deceased wife, of which the appellant is the duly appointed administratrix. As administratrix with the will annexed, it was her duty to defend the will, and she employed an attorney for that purpose. We think that that was a necessary expense of administration. See Rem. Rev. Stat., §§ 1526-1528 [P.P.C. §§ 192-5—192-9]. See, also, *In re Jolly's Estate,* 3 Wn. (2d) 615, 101 P. (2d) 995, 128 A. L. R. 993, concerning which this court said, in its opinion in *In re Klein's Estate,* 28 Wn. (2d) 456, 183 P. (2d) 518:

"The rule for which the *Jolly* case, *supra,* is ample authority and which in our opinion is supported by the weight of judicial opinion and better reasoning is this: Where a will is contested, whether before or after its probate, it is the duty of the executor to take all legitimate steps to uphold the testamentary instrument; and if he does so in good faith, he is entitled to an allowance out of the estate for his costs and reasonable attorney fees necessarily incurred by him, regardless of whether or not he is successful in his defense against the contest of the will." (p. 475)

The will contest was still pending when this matter was heard and will necessitate a trial in the superior court, and perhaps an appeal. There is no way of estimating what sum that litigation may add to the normal and ordinary expenses of administration.

In announcing his decision at the close of the hearing, the judge said, referring to the petitioner: .

"But this man is not taking all the property. There is sufficient property here over. The estate can proceed just the same and there is plenty of money to pay, I might say as provided for, because here is $5,000 to pay the fees first and then pay the claimant, and pay whatever claim the court ordered. I would say your fee is provided for because it is all right here. That is sufficient property and this other section here covers setting over separate property if it isn't disposed of by will, so I will set it over, $400 property and $36.61."

Previously to that he had said: "The appraisement is $5400 and I am setting over here $436."

It is true that, in the first appraisement of the property of the estate, its value was fixed at $5,450. That was arrived at by appraising each item of property devised by the will and adding the results. The principal part of the $5,450 was the appraised value of the decedent's home. We quote from the first inventory and appraisement:

"Lots One (1) to Five (5), inclusive, Block Eight (8), Dewey's 1st Addition to Tacoma, Pierce County, Wash., Real Property, $3,600.00."

That property was devised as follows:

"To my dear mother Margaret S. Thornton and stepfather Ralph D. Thornton I leave my home and contents and five lots at 7434 So. D st., Dewy's First Addition, Block 8. "

The next largest item used to make up the $5,450 was: "Total Appraised Valuation of Personal Estate, $450.00." That property was devised as follows:

"My personal effects to my sisters, Lovell Floyd and Della Peterson."

The record very clearly shows that the trial judge entered his decree on the theory that there was property in the estate of a value of more than five thousand dollars. If that was so, the bulk of that property was devised by the will. In arriving at the appraisement of $5,450, the appraisers included and appraised the following described real property:

"Lots Six (6) and Seven (7), Block Eight (8), Dewey's 1st Addition to Tacoma, Pierce County, Washington,"

at $400. The first appraisement of $5,450, in which that $400 was included, was carried into the second and final appraisement, and an item, not included in the first inventory, appeared in the second, a deposit in a mutual savings bank valued at $36.61, making a final appraisement of $5,486.61. But if that was the actual value of the property of the estate at the time of the hearing, it was no longer so after the court entered the decree appealed from on June 23, 1950. Since that decree set over to respondent the two lots and the bank account of $36.61, both of which were included in the $5,486.61 appraisement, $5,486.61 less $436.61, leaves $5,050 as the value of the property of the estate. But what amount will be needed to pay or provide for the expenses of administration? No one knows how much or where it is to come from. Since the decree set aside to the respondent all of the undevised property of the decedent, it would seem that the expenses of administration can only be paid by selling some of the devised property. That was clearly the property the trial judge had in mind when he said to the appellant's counsel, "There is plenty of property in the estate to pay your fees," and "The appraisement is $5400 and I am setting over here $436." It seems clear that the only way the estate can raise any money to pay the expenses of administration is to sell the house and five lots which Mrs. Caine devised to her mother and stepfather which were appraised at $3,600, or Mrs. Caine's personal effects which she devised to her sisters and which were appraised at $450.

In making provision in Rem. Supp. 1949, § 1473, for setting aside property to surviving spouses in lieu of homestead, the legislature apparently intended to protect the rights of devisees. Witness the proviso in the last three lines of the statute:

"*Provided,* That the awards provided for in this section shall not be taken from separate property of the deceased which is otherwise disposed of by will."

■ As we have hitherto noted, in interpreting and construing Rem. Supp. 1949, § 1473, this court has clearly held, in its opinion in *In re Poli's Estate,* 27 Wn. (2d) 670, 673, 179 P. (2d) 704, that it is a prerequisite to the award to a surviving spouse of property of the estate in lieu of homestead that the expenses of administration have been paid or provided for. That is the firmly established law of this state.

We cannot agree with the trial court that that prerequisite was met in this case. It is, therefore, our duty to direct the trial court to cancel and set aside that decree entered "In the Matter of the Estate of Minnie Caine, Deceased," No. 49724 of the superior court of the state of Washington for the county of Pierce on June 23, 1950, setting over to respondent the two lots and the bank account. It is so ordered.

The appellant will be entitled to tax her costs on appeal.

MALLERY, GRADY, and HAMLEY, JJ., concur.

SCHWELLENBACH, C. J. (concurring in the result)—I concur in the result. There was not a sufficient showing that the expenses of administration had been paid or provided for. The only testimony in the record concerning administration expenses is the following:

"Q. (By Muscek) The expenses of administration, like my expenses, you have provided for; is that correct? A. (By Caine) That is right."

The trial court said:

"I think the statute is clear that the surviving husband or surviving wife has the right to four thousand dollars inde-

pendent of any creditors or anything else, *but he has to show that he has paid the attorney's fees in the proceeding that he brings to set over."* (Italics mine.)

The trial court was apparently of the opinion that if the surviving spouse showed that he had paid the expenses of having the property set aside to him, he was entitled to the award as a matter of right. Before he can have the property set aside to him he must show that the expenses of administration *of the estate* have been paid or provided for. That showing was not made in this case.

I am particularly concerned with the following statement in the majority opinion:

"In making provision in Rem. Supp. 1949, § 1473, for setting aside property to surviving spouses in lieu of homestead, *the legislature apparently intended to protect the rights of devisees.* [Italics mine.] Witness the proviso in the last three lines of the statute:

" '*Provided,* That the awards provided for in this section shall not be taken from separate property of the deceased which is otherwise disposed of by will.' "

The above statement would lead to the inference that an award in lieu of homestead cannot be made of separate property (not otherwise disposed of by will), if such award would deplete any devises made in the will. The proviso to the statute means that no award in lieu of homestead can be made of any separate property which has been disposed of by will. If there is separate property not disposed of by will, the surviving spouse may, as a matter of right, have such property, up to the value of $4,000 set aside, provided he makes the showing contemplated by the statute.

In *In re Welch's Estate,* 200 Wash. 686, 94 P. (2d) 758, the contention was made that the award would diminish the distributive share of an incompetent minor. We held:

"We think the court erred in denying appellant's petition because of the short duration of the marriage and the further fact that such an award would diminish the distributive share of the minor.

"We have consistently held that award statutes, such as §§ 1473 and 1474, *supra,* give an absolute right, which is not subject to collateral conditions and should not be influenced

by the countervailing equities; that such statutes are not, strictly speaking, homestead and exemption laws, although like general laws exempting homesteads and certain personal property, they rest in a sound public policy and are calculated to prevent dependency."

See, also, *In re Poli's Estate,* 27 Wn. (2d) 670, 179 P. (2d) 704.

We held in *In re Small's Estate,* 27 Wn. (2d) 677, 179 P. (2d) 505, that the fact that an award to the surviving spouse would diminish an heir's distributive share cannot defeat that right, which is an absolute one.

In the above cases we were dealing with intestate estates, but the holdings therein are indicative of the nature of the right of the surviving spouse, and the favor with which it is to be viewed.

Rem. Rev. Stat., § 1506 [P.P.C. § 213-29], provides:

"If the provision made by the will or the estate appropriated be not sufficient to pay the debts and expenses of administration and family expenses, such part of the estate as shall not have been disposed of by the will, if any, shall be appropriated for that purpose, according to the provisions of this chapter."

Rem. Rev. Stat., § 1507 [P.P.C. § 213-31], provides:

"The estate, real and personal, given by the will to any legatees or devisees, shall be held liable for the payment of the debts, the expenses of administration and allowances to the family, in proportion to the value or amount of the several devises or legacies, if there shall not be other sufficient estate, except that specific devises or legacies may be exempted, if it appear to the court necessary to carry into effect the intention of the testator."

The meaning of § 1506 is simply this: If at the time the estate is ready to be closed, the provision made by the will is not sufficient to pay the debts and expenses of administration and family expenses, then such part of the estate as was not disposed of by will, "*if any,*" shall be appropriated for that purpose. However, if before the estate is closed, any of such separate property not disposed of by will has been set aside to the surviving spouse, such property has been

lifted out of the estate and is not before the court at the final hearing.

Rem. Supp. 1949, § 1473, provides that the order setting aside shall vest the absolute title, "and thereafter there shall be no further administration upon such portion of the estate so set off. . . ." Furthermore, § 1473 provides that there shall be set aside property of the value of $4,000.00, "exclusive of funeral expenses, expenses of last sickness and of administration."

In the will under consideration there was no residuary clause. The property sought to be set aside was not devised, and should have been awarded to the surviving spouse, provided he had made the proper showing as to the costs of administration.