[No. 4985.   Decided March 16, 1904.]

JOHN G. HUNT et al., *Appellants*, v. ALBERT A. PHILLIPS
et al., *Respondents*.[1]

WILLS—CONTEST—BURDEN OF PROOF—APPEAL—TRIAL DE NOVO.
Upon the contest of a will which has been admitted to probate
*ex parte*, the burden of proof is upon the contestants to establish
every material fact alleged; but the ruling of the trial court upon
this point is immaterial, since the supreme court tries the case
*de novo*.

APPEAL—HARMLESS ERROR—TRIAL DE NOVO.   The admission of
incompetent evidence is harmless where the supreme court tries
the case *de novo* on appeal.

WILLS—CONTEST—CONSTRUCTION—NO PRESUMPTION IN FAVOR
OF HEIRS.   In construing a will contested by disinherited heirs,
no presumptions can be indulged in favor of rights conferred by
the law of descent and distribution, which are no more potent
than the right to make a voluntary distribution.

WILLS—EXECUTION—UNDUE INFLUENCE—COSTS TO CONTESTANTS.
Evidence examined, and found to sustain findings of due execution,
lack of undue influence, and testamentary capacity, and that an al-
lowance for costs to the contestants was properly refused.

Appeal from a judgment of the superior court for
Thurston county, A. L. Miller, J., entered July 2, 1903,
after a trial on the merits before the court without a
jury, decreeing the validity and due execution of a will.
Affirmed.

*W. F. Arnold* and *Ben Sheeks* (*J. W. Robinson* and
*J. B. Reavis*, of counsel), for appellants.   Upon the con-
test of a will probated *ex parte*, the burden of proof is
upon the proponents.   *Hubbard v. Hubbard*, 7 Ore. 42;
*Heirs of Clark v. Ellis*, 9 Ore. 128; *Luper v. Werts*, 19
Ore. 122, 23 Pac. 850; *In re Mendenhall's Will*, 43 Ore.
542, 73 Pac. 1033; *Sawyer v. White*, 122 Fed. 223; *Lamb*

[1] Reported in 75 Pac. 970.

*v. Helm,* 56 Mo. 420; *Benoist v. Murrin,* 48 Mo. 48; *Tingley v. Cowgill,* 48 Mo. 291; *Craig v. Southard,* 148 Ill. 37, 35 N. E. 361; *Carpenter v. Calvert,* 83 Ill. 71; *Taylor v. Cox,* 153 Ill. 220, 38 N. E. 656; *Bevelot v. Lestrade,* 153 Ill. 625, 38 N. E. 1056; *Rigg v. Wilton,* 13 Ill. 15, 54 Am. Dec. 419; *Tate v. Tate,* 89 Ill. 42; *Moyer v. Swygart,* 125 Ill. 262, 17 N. E. 450; *Tucker v. Sandidge,* 85 Va. 556, 8 S. E. 650; *Riddell v. Johnson's Ex'r,* 26 Grat. (Va.) 152; *Chappell v. Trent,* 90 Va. 849, 19 S. E. 314; *Crowninshield v. Crowninshield,* 2 Gray 527; *McMechen v. McMechen,* 17 W. Va. 683, 41 Am. Rep. 682; *Williams v. Robinson,* 42 Vt. 658, 1 Am. Rep. 359; *Barlow v. Waters* (Ky.), 28 S. W. 785; *Fee v. Taylor,* 83 Ky. 259; *Johnson v. Stivers,* 95 Ky. 128, 23 S. W. 957; *Porschet v. Porschet,* 82 Ky. 93, 56 Am. Rep. 880; *Robinson v. Adams,* 62 Me. 569; *In re Thomas,* 111 N. C. 409, 16 S. E. 226; *In re Burns' Will,* 121 N. C., 336, 28 S. E. 519; *Livingston's Appeal,* 63 Conn. 68, 26 Atl. 470; *Rockwell's Appeal,* 54 Conn. 119, 6 Atl. 198; *Brown v. Walker* (Miss.), 11 South. 724; *Swain v. Edmunds,* 53 N. J. Eq. 142, 32 Atl. 369; *Kempsey v. McGinniss,* 21 Mich. 123; *Aikin v. Weckerly,* 19 Mich 482; *Taff v. Hosmer,* 14 Mich. 309; *Evans v. Arnold,* 52 Ga. 169; *Beazley v. Denson,* 40 Tex. 436; *Roberts v. Welch,* 46 Vt. 164; *Williams v. Robinson,* 42 Vt. 658, 1 Am. Rep. 359; *Donovan v. Fowler,* 17 Neb. 247, 22 N. W. 424; *Seebrock v. Fedawa,* 30 Neb. 424, 46 N. W. 650; *Delafield v. Parish,* 25 N. Y. 35. The will was not duly executed because the attesting witnesses did not witness the execution, and did not sign in the presence of each other or know that the paper was a will. *Luper v. Werts,* 19 Ore. 122, 23 Pac. 850; *Richardson v. Orth,* 40 Ore. 252, 66 Pac. 925, 69 Pac. 455; *In re Skinner's*

*Will,* 40 Ore. 571, 62 Pac. 523, 67 Pac. 951; *In re Mendenhall's Will, supra; In re Layman's Will,* 40 Minn. 371, 42 N. W. 286; *Tobin v. Haack,* 79 Minn. 101, 81 N. W. 758; *Chase v. Kittredge,* 11 Allen 63, 87 Am. Dec. 687; *Reed v. Watson,* 27 Ind. 443; *Swift v. Wiley,* 1 B. Mon. 114; *Simmons v. Leonard,* 91 Tenn. 183, 30 Am. St. 875; *Lewis v. Lewis,* 11 N. Y. 220; *In re Will of Mackay,* 110 N. Y. 611, 18 N. E. 433, 6 Am. St. 405; *In re Laudy's Will,* 148 N. Y. 403, 42 N. E. 1061. It was not duly attested because not signed by the testatrix at the time the witnesses signed. *Chase v. Kittredge, supra; Sisters of Charity v. Kelly,* 67 N. Y. 413; *Jackson v. Jackson,* 39 N. Y. 153; *Mitchell v. Mitchell,* 16 Hun 97, 77 N. Y. 596; *Chaffee v. Baptist M. S.,* 10 Paige 86, 40 Am. Dec. 225; *Brinckerhoof v. Remsen,* 8 Paige 488; *Rutherford v. Rutherford,* 1 Denio 33, 43 Am. Dec. 644; *Brooks v. Woodson,* 87 Ga., 379, 13 S. E. 712; *Duffie v. Corridon,* 40 Ga. 122; *Fowler v. Stagner,* 55 Tex. 393; *Reed v. Watson,* 27 Ind. 443; *Simmons v. Leonard,* 91 Tenn. 183, 18 S. W. 280, 30 Am. St. 875; *Ragland v. Huntingdon,* 23 N. C. 561; *In re Cox Will,* 46 N. C. 321; *Keyl v. Feuchter,* 56 Ohio St. 424, 47 N. E. 140; *Allen v. Griffin,* 69 Wis. 529, 35 N. W. 21; *Schermerhorn v. Merritt,* 123 Mich. 110, 82 N. W. 513.

*T. N. Allen, Troy & Falknor,* and *C. D. King,* for respondents.

DUNBAR, J.—This is a proceeding in contest of the will of Abbie Howard Hunt Stuart, deceased, a resident of Thurston county, Washington, who died in San Francisco, California, on the 5th day of January, 1902. The will was executed on the 18th day of September, 1901, and Mrs. Stuart died on the 5th day of the following

January. On January 14, 1902, a document purporting to be the will of decedent was probated by the superior court for Thurston county. This document named Albert A. Phillips and Henry B. McElroy as executors. The will disinherited all of the relations of the decedent, except John G. Hunt, a brother, who was bequeathed $100. The assets of the estate are variously estimated at from $50,000 to $100,000, and, aside from mementoes and bequests of some considerable value to Albert A. Phillips and Georgiana S. Gowey, the will devised said estate, in equal parts, to Eva W. Gove of Tacoma, Washington, Mary Lowe Dickinson of New York, and Sarah M. Utt of California, none of whom are related to decedent.

Within the statutory period John G. Hunt, a brother, and the nieces and nephews of the deceased, whose parents are dead, filed their verified petition in contest, alleging the relationship of the contestants to the decedent, and showing petitioners to be the only heirs at law of Mrs. Stuart. They also set forth in their petition their objections and exceptions to the *ex parte* probate of the alleged will—because the same was not the will of Abbie H. H. Stuart; because the same was not signed by her, or witnessed, or attested, as by law required, or at all; because decedent was of unsound mind and incapacitated from lawfully devising her property; and alleged that, at the date of the execution of the paper writing purporting to be a will, and long prior thereto, Eva W. Gove and other principal legatees, exercised a strange, abnormal, and unlawful influence over the decedent, and, as a result thereof, they unduly and fraudulently influenced her to make the will in question and to disinherit the petitioners. Issues were substantially made up by denial of the material contesting allegations.

At the beginning of the trial, which was before the court without a jury, attorneys for the contestants moved that the proponents be required to establish the will prima facie, before the contestants were required to introduce any evidence in support of their objections and excep- tions and the negative allegations in the petition, for the reason that, the relationship being admitted, the contest- ants, as the heirs at law of deceased, had a right to rest upon the law of descent and distribution. The court however ruled that the burden of proof was upon the con- testants; that they must establish every material affirma- tive and negative allegation of facts contained in their petition, by a fair preponderance of the evidence. To this ruling the contestants saved an exception, and the trial proceeded upon that theory, and a decree was entered upholding the will, from which this appeal is taken.

After the decree had been made, contestants applied to the court for allowance of costs and attorney's fees which was denied, and this ruling is also here for re- view. The court found, in addition to the date of the death, execution of the will, etc., as set forth above, that said will was duly presented for probate by said execu- tors; that its due execution, publication, and attestation on the 18th day of September, 1901, together with the death of the testatrix as aforesaid, were proven to the satisfaction of said court on the 14th day of January, 1902, as was also the testamentary capacity of said testa- trix at the time she made her said will; that the testi- mony was duly reduced to writing, and subscribed and sworn to by the attesting witnesses on the said 14th day of January, 1902; and that on said last mentioned day a finding of fact and certificate in accordance with said testimony was duly made and entered by the court and judge thereof, establishing said will, and admitting the

same to probate, and directing letters testamentary to
issue to said executors; that thereupon testamentary let-
ters were duly issued to said executors, who took posses-
sion and control of said estate, and entered upon the dis-
charge of their duties as said executors—reciting the in-
stitution of the action by Hunt and others, and the grounds
of the contest; and finding, that the testatrix, at the
time of the execution of the will, was of sound mind
and disposing memory; that she was not unduly influ-
enced in disposing of her estate thereby; that said will
was in writing, and was wholly written by her, the said
Abbie Howard Hunt Stuart, together with the attesta-
tion clause, and was duly subscribed and published by
her in the presence of two competent attesting witnesses;
and that said witnesses, in her presence, and at her re-
quest, and in presence of each other, duly witnessed and
attested the same by subscribing their names thereto;
and that in all respects said will was duly and legally
executed, published, and attested.

As a conclusion of law, it was found that the will and
testament aforesaid was in all respects a valid instru-
ment, and was the last will and testament of said Abbie
H. H. Stuart, and that the disposition made therein of
the real and personal estate of said testatrix was legal,
binding, and sufficient; that said disposition was conclu-
sive as to the rights or claims of all persons whomsoever,
including the contestants or plaintiffs in this action; that
the contestees or defendants were entitled to a judgment
in conformity to said findings and conclusions. Certain
findings of fact and conclusions of law were proposed by
the contestants, which were denied by the court.

The first contention of appellants is that the court erred
in overruling the motion of the attorneys for contestants
that the proponents be required to establish the will

prima facie, before the contestants were required to introduce any evidence in support of their objections and exceptions and the negative allegations in the petition. We think the court did not err in overruling the motion. The will had already been established prima facie. That being true, it must stand as a valid will until such prima facie establishment has been overcome by the evidence of the contestants. We think, instead of doing violence to the ordinary rules of pleading and evidence, the ruling of the court was in exact harmony with the general proposition of law that the burden of proving a proposition is upon him who asserts it. In addition to this, this question was squarely before this court in *Higgins v. Nethery,* 30 Wash. 239, 70 Pac. 489, where it was decided that, where the record showed that the court had jurisdiction, and the facts showed prima facie a valid will, the burden was on the appellants to show that the will was invalid. And, further, it is immaterial to the consideration of this case by this court what the ruling in this respect was, as this court tries the case *de novo,* and will give to the whole testimony such weight as it thinks it is entitled to.

This disposes also of the objection to the admission of certain affidavits. If testimony admitted is not competent, it will not be considered. But, as we have repeatedly announced, in a case tried *de novo* in this court, the admission of incompetent testimony will not be grounds for the reversal of a judgment, although for manifest reasons the refusal of the trial court to admit competent testimony would ordinarily be good ground for reversal.

The other questions involved reach the merits of the case. A great deal is said in the elaborate briefs of counsel for appellants upon the duty of courts to construe wills

with reference to the rights of heirs at law conferred by the law of descent and distribution. But the rights conferred by the law of descent and distribution are no more potent than the right conferred by the law to make a voluntary distribution of one's estate. It is doubtless true that the law of descent and distribution disposes of the estate, in the absence of testamentary disposition, in accordance with the dictates of common affection, but the right of independent disposition is just as absolute, and no presumption can be indulged in against the exercise of this legal right. A case in many respects similar to the one at bar was that of *In re Gorkow's Estate,* decided by this court and reported in 20 Wash. 563, 56 Pac. .385. In reviewing the facts in that case, it was said by this court:

"The substantial facts, without controversy, shown were, that the deceased was a man of violent and ungovernable passions; that he was inordinately dissipated; that his acts evinced a total want of moral nature and natural affection; that he had for a number of years preceding his death been the subject of several painful maladies, some of them incurable, and that physically his system was completely wrecked; that he required a body servant for a considerable time constantly in attendance; that his second marriage was eccentric, foolish and, from every reasonable standpoint, reprehensible. In fact, it may be conceded from the whole testimony that the deceased, as stated in the rather vigorous language of counsel for petitioner, was 'a moral leper,' and that the inference might reasonably be drawn from all these facts that his mental vigor was impaired. Indeed, the record does not disclose any particular mental capacity or traits in the deceased except the ability to make and take care of money during his life. But the capacity required for a will is very well summed up, and stated, as the deduction from a long line of recognized authorities, by Judge Redfield in the following language; 'The result of the best considered cases

24-34 WASH.

upon the subject seems to put a quantum of understanding requisite to the valid execution of a will upon the basis of knowing and comprehending the transaction, or, in popular phrase, that the testator should at the time of executing the will know and understand what he was about.' "

And the following quotations are excerpts from decisions cited with approval by this court:

"The right of a testator to dispose of his estate depends neither on the justice of his prejudices nor the soundness of his reasoning. He may do what he will with his own; and if there be no defect of testamentary capacity, and no undue influence or fraud, the law gives effect to his will, though its provisions are unreasonable and unjust." *Clapp v. Fullerton*, 34 N. Y. 190, 90 Am. Dec. 681.

"It is a testator's privilege to make such disposition of his property as he pleases, and, if the will is his— that is, if it is the voluntary act of a competent testator— it must stand, if properly executed in form." *Mitchell v. Mitchell*, 43 Minn. 73, 44 N. W. 885.

"It may be harsh, and, under some circumstances, cruel to disinherit one child and to distribute the estate among the others, but if the testator be of sound mind and execute his will as prescribed by law, no court can interfere." *Potter v. Jones*, 20 Ore. 239, 25 Pac. 769, 12 L. R. A. 161.

"But the right to dispose of one's property by will is most solemnly assured by law, and is a most valuable incident to ownership, and does not depend upon its judicious use. The beneficiaries of a will are as much entitled to protection as any other property owners, and courts abdicate their functions when they permit the prejudices of a jury to set aside a will merely upon suspicion, or because it does not conform to their ideas of what was just and proper." *In re McDevitt*, 95 Cal. 17, 30 Pac. 101.

"He may disinherit either wholly or partially his children and leave his property to strangers to gratify his spite, or charities to gratify his pride, and we must give effect to his will, however much we may condemn the course he has pursued." *Boughton v. Knight,* 6 Moak, Eng. Rep. 349.

An analytical review of the testimony in the case would be unprofitable. It is sufficient to say that, from an examination of all the testimony, we think the findings of the court were fully justified, both as to the legal execution of the will and the lack of undue influence exercised upon the testator, as alleged by contestants; and that it plainly appears that, at the time of the execution of the will, the testator was of a sound and disposing mind.

It is not necessary to enter into a discussion of the question of the power of the court under the statute to award costs to the contestants, for we do not think that the record discloses a case which, under the circumstances, would justify the court in awarding such costs.

The judgment is in all things affirmed.

FULLERTON, C. J., HADLEY, MOUNT, and ANDERS, JJ., concur.