[No. 21355-9-II. Division Two. December 31, 1998.]

MARIE PITZER, ET AL., *Appellants*, v. UNION BANK OF CALIFORNIA, *as Personal Representative, Respondent.*

*In the Matter of the Estate of* ROSE MAGRINI.

*In the Matter of the Estate of* FRANK MAGRINI.

422

*Craig E. Coombs* and *Franklin W. Shoichet* of *Prince Kelley Marshall & Coombs, P.S.*, for appellants.

*K. Michael Jennings* and *Paul R. Willett* of *McGavick Graves*, for respondent.

ARMSTRONG, J. — Marie Pitzer, Carolann Guilford, and James Allotta (the claimants) seek to reopen the estate of Frank Magrini, who died in 1965. They also seek to impose a trust on assets in the estate of Rose Magrini, Frank's widow, who died in 1995. The claimants allege that they are the illegitimate children of Frank Magrini; that they have rights to a portion of Frank's estate under the pretermitted heir statute; that Rose, the personal representative of Frank's estate, did not give them notice of their possible claims; and that, as a result, Rose received assets from Frank's estate the claimants should have received. At the

time of Frank's death, RCW 11.04.080[1] allowed an illegitimate child to inherit from his or her father only if the child could produce a written, signed acknowledgment of paternity by the father. The claimants concede they have no such acknowledgment, but contend that former RCW 11.04.080 is unconstitutional and that they qualify as Frank's heirs if they can prove paternity other than by a written acknowledgment. We hold that Rose, if she knew the claimants were Frank's children, had a duty to give them notice of the probate of Frank's estate, that former RCW 11.04.080 is unconstitutional, and that Rose may have been unjustly enriched by her failure to give notice. Accordingly, we reverse summary judgment in favor of the estates.

## FACTS

Anna Allotta gave birth to the claimants during her marriage to Fisher Allotta. Fisher's sister, Rose, was married to Frank Magrini. Frank and Rose had no children.

When Frank died in September 1965, he left his entire estate to his wife, Rose. The will named Fisher Allotta as a contingent beneficiary of a trust fund, and "my wife's nephew, James," as the beneficiary of the trust fund "if there are assets remaining" at the time of Fisher Allotta's death. The will also provided for the distribution of the residual estate among certain "nieces and nephews of my wife and myself." The list included the claimants.

Frank's will named Rose and his attorney as co-executors of the estate. The executors filed a declaration of completion of administration in March 1974, and the estate automatically closed 30 days later.

Rose died in December 1995. Union Bank of California is the personal representative of her estate.

---

[1]This statute was subsequently repealed and recodified at RCW 11.04.081. In 1975-76, the Legislature rewrote the section as follows: "For the purpose of inheritance to, through, and from any child, the effects and treatment of the parent-child relationship shall not depend upon whether or not the parents have been married." LAWS OF 1975-76, 2d Ex. Sess., ch. 42, § 24.

In April 1996, the claimants petitioned to reopen Frank's estate, claiming that they qualified as heirs under the pretermitted child statute and that Rose and her attorney breached their duties as personal representatives by failing to give the claimants notice of the probate of Frank's estate. In support of the action, the claimants filed their own declarations and declarations from an aunt and two cousins who said that they had known about the claimants' paternity for many years but had been sworn to secrecy. It was not until Rose died that they shared the "secret" with each other. *See* ER 804(b)(4).[2]

In her declaration, Carolann described visiting Rose in the hospital during Rose's "last illness" when Rose was "in and out of consciousness a lot." James Allotta came for a visit and Rose recognized him. When James left the room, "Rose took a mask off her face . . . and said: 'Frank's son.' (She was barely able to speak at this point.)"

Carolann later discussed Rose's comment with the declarant aunt and cousins, who told her that Frank was the father of all three claimants. The claimants contend that they had no suspicion that Frank was their father until Rose made her deathbed comment.

The claimants also filed as creditors against Rose's estate, alleging unjust enrichment. They contend that, as pretermitted children, they were entitled to receive their intestate share of Frank's estate and that by failing to give them notice, Rose received their share and was unjustly enriched. Following the denial of their creditors' claim, the claimants sued the estate, seeking to impose a constructive trust on a portion of Rose's estate equal to their intestate share of Frank's estate. The trial court consolidated the two estate actions.

In yet another proceeding, the claimants sued to estab-

---

[2]ER 804(b)(4) provides a hearsay exception if the declarant is unavailable as a witness for "[a] statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated . . . ."

lish paternity. At oral argument on this case, counsel advised the court that the paternity action is still pending.

After hearing the bank's motion to dismiss the petition to reopen the Frank Magrini estate, the trial court concluded that (1) former RCW 11.04.080 was constitutional; (2) the claimants did not qualify as heirs because they did not satisfy the statutory requirement of producing a declaration from Frank acknowledging them as his children; and (3) to reopen Frank's estate it was necessary to show fraud, a showing that the claimants had failed to make. Thus, the court summarily dismissed both actions.

## ANALYSIS
### A. Duty to Give Notice

In 1965, RCW 11.76.040 required a personal representative to give notice of his or her appointment and of the pending probate to "each heir and distributee of said estate whose name and address is known to him . . . ." Former RCW 11.76.040 (1955) (amended by LAWS OF 1969, ch. 70, § 3). "Heir" was defined in RCW 11.04.280, which stated in part:

> The word "heirs" shall be construed as meaning the person or persons to whom land, tenements, and hereditaments descend as defined in RCW 11.04.010, 11.04.020, 11.04.050, 11.04.060 and 11.04.080 through 11.04.170.

Former RCW 11.04.280 (repealed by LAWS OF 1965, ch. 145, § 11.99.015). Former RCW 11.04.080 limited the rights of illegitimate children to inherit from their fathers to those whose fathers had acknowledged paternity in a signed, witnessed writing.

The question here is whether Rose had a duty to give notice to all known illegitimate children or only those who had the appropriate written acknowledgment. Stated in a slightly different way, did Rose have a duty to give notice to all possible heirs or only those who could prove they were heirs under the statute by producing a written

acknowledgment? Because Rose had a right to rely upon the statute in effect during Frank's probate,[3] we assume former RCW 11.04.080 was constitutional for purposes of this discussion.

The Washington Supreme Court has addressed the question of notice to possible heirs in the context of an intestacy. In *Francon v. Cox*, 38 Wn.2d 530, 231 P.2d 265 (1951), the court held that a widow-administratrix had a duty to give notice to a possible child of the decedent even though the widow believed her husband was not the father of the child. *Francon*, 38 Wn.2d at 539-40. In concluding that failure to give probate notice to the child amounted to extrinsic fraud, the court said: "[widow], as administratrix, took it upon herself to determine that appellant was not an heir of decedent when this was clearly a matter for the probate court to decide." *Francon*, 38 Wn.2d at 537.

■ Rose's duty to give notice is necessarily limited by her knowledge, i.e., she has a duty to give notice to those she knows, or with the exercise of reasonable diligence should know, to be heirs. *Hesthagen v. Harby*, 78 Wn.2d 934, 941, 481 P.2d 438 (1971) (heirs and distributees entitled to notice include those whose names and addresses are ascertainable by the exercise of due diligence). But Rose can never definitively know whether Frank executed a written acknowledgment for an illegitimate child. The most Rose can say is that she is unaware of a written acknowledgment for the child. Yet, the child or a third party could have such an acknowledgment. Thus, if Rose has a duty to give notice only to those she knows have a written acknowledgment, and she can never know for certain whether an acknowledgment exists, she can never know for certain to whom she must give notice. Such uncertainty ill-serves the finality of probate proceedings. *In re Estate of Toth*, 91 Wn. App. 204, 210, 955 P.2d 856 (1998) (failure of personal representative to timely notify interested parties in conformity with RCW 11.28.237 denies them due pro-

[3]*See State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997) (statutes presumed to be constitutional).

cess and renders the decree of distribution void) (citation omitted).

Furthermore, reading the statute to require that Rose give notice only to those she knows to have a written acknowledgment raises due process concerns. Under such a reading, Rose would not be required to give notice to pretermitted heir claimants who might have valid claims, i.e., illegitimate children who, unknown to Rose, have a written acknowledgment. Yet such children have as much interest in the estate as those known to have a written acknowledgment. And such a reading may violate due process:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).

We conclude that if Rose knew, or in the exercise of due diligence should have known, that Frank was the probable father of the claimants, she had a duty to give them notice of Frank's probate even if she did not know of any written acknowledgment by Frank.

### B. Constitutionality of Washington's Illegitimacy-Inheritance Statute

Having decided that Rose had a duty to give notice, we next consider whether the claimants could have established their rights as pretermitted heirs at the time of Frank's death. Since the claimants concede that they do not have a written acknowledgment from Frank of his paternity, as required by the statute, they must demonstrate that the former statute was unconstitutional.

The standard of review for equal protection challenges to statutes that classify children on the basis of legitimacy is intermediate scrutiny. This standard is more

exacting than a rational basis review, but does not rise to the level of a strict scrutiny review. *Trimble v. Gordon*, 430 U.S. 762, 767, 97 S. Ct. 1459, 52 L. Ed. 2d 31 (1977). The United States Supreme Court has declared classifications against illegitimate children valid only "to the extent they are substantially related to a legitimate state interest." *Mills v. Habluetzel*, 456 U.S. 91, 99, 102 S. Ct. 1549, 71 L. Ed. 2d 770 (1982) (citations omitted).

 At the time of Frank's death, Washington limited the inheritance rights of illegitimate children. Such children were required to have a written, signed acknowledgement of paternity by the father. Former RCW 11.04.080 provided in relevant part:

> Every illegitimate child shall be considered as an heir of the person who shall in writing, signed in the presence of a competent witness, have acknowledged himself to be the father of such child, and shall in all cases be considered as heir of his mother, and shall inherit his or her estate in whole or in part, as the case may be, in the same manner as if he had been born in lawful wedlock . . . .

Former RCW 11.04.080 (recodified as RCW 11.04.081 by LAWS OF 1965, ch. 145, § 11.04.081). The state interests protected by this classification presumably included: (1) fostering an efficient system of disposing of a decedent's property; (2) protecting the validity and dependability of titles to property passing under intestacy laws; and (3) protecting the putative father's estate against the risk of spurious or fraudulent claims. *See Lalli v. Lalli*, 439 U.S. 259, 265, 99 S. Ct. 518, 58 L. Ed. 2d 503 (1978); *Cox v. Schweiker*, 684 F.2d 310, 320 (5th Cir. 1982). Because the means chosen by former RCW 11.04.080 are not substantially related to these legitimate state interests, the statute is clearly unconstitutional.[4]

In *Trimble v. Gordon*, the Supreme Court invalidated an

---

[4]As we find the statute violates the equal protection clause, we do not reach the issue of whether former RCW 11.04.080 violates Washington's Equal Rights Amendment or constitutes an unconstitutional sex-based classification.

Illinois statute that required both marriage of the putative father to the mother and an acknowledgment of paternity by the father before an illegitimate child could inherit from his or her father. *Trimble*, 430 U.S. at 772. The Court declared the law unconstitutional, reasoning that the means adopted excluded "significant categories of illegitimate children of intestate men" whose inheritance rights could have been recognized without jeopardizing the legitimate state interest in the orderly disposition of property at death. *Trimble*, 430 U.S. at 771.

In contrast, the Supreme Court upheld an intestacy scheme from New York, which required the illegitimate child to obtain an adjudication of paternity during the lifetime of the putative father. *Lalli*, 439 U.S. at 266. The Court concluded that the statute achieved an appropriate balance between the interests of the child, the putative father's estate, and the state. *Lalli*, 439 U.S. at 273.

The Fifth Circuit examined the constitutionality of two sections of a Georgia statute, which provided that an illegitimate child could be legitimated by one of two alternative methods. An illegitimate child could be deemed legitimate if (1) the parents married and the father acknowledged the child; or (2) the father obtained an order of legitimation from the superior court. *Cox*, 684 F.2d at 322. The court declared the first method unconstitutional because it was essentially identical to the statute invalidated in *Trimble*. *Cox*, 684 F.2d at 322. The court also held the second method unconstitutional because it left the initiation of legitimation to the discretionary control of the putative father. *Cox*, 684 F.2d at 323. The court noted that Georgia could protect its interest in having an accurate system of proving paternity without leaving the discretion exclusively with the father. *Cox*, 684 F.2d at 323.

The Florida State Supreme Court held unconstitutional a statute almost identical to former RCW 11.04.080 in *In re Estate of Burris*, 361 So. 2d 152 (Fla. 1978). The court found:

[T]he statute here under attack does not address the "stan-

dard of proof," but merely sets forth the kind of evidence required to prove the fact of paternity, to the exclusion of all other kinds of evidence. Even proof beyond a reasonable doubt would be insufficient unless the illegitimate child introduced evidence of a written acknowledgment, signed by the natural father in the presence of a competent witness. The court in Trimble recognized the difficult problems involved in the proof of paternity, but concluded that they cannot be made into an "impenetrable barrier that works to shield invidious discrimination."

*Burris*, 361 So. 2d at 155 (quoting *Trimble*, 430 U.S. at 771). Because the state could not sufficiently justify these restrictions on an illegitimate child's right to inherit intestate property, the court held the statute unconstitutional. *Burris*, 361 So. 2d at 155.

Washington's intestacy scheme in 1965 restricted the rights of illegitimate children, permitting paternal inheritance only if a written, signed acknowledgement of paternity by the father was produced. While Washington has a legitimate interest in determining paternity and ensuring the orderly disposition of property at death, former RCW 11.04.080 excluded more illegitimate children from inheriting from their fathers than was necessary to further these interests. Moreover, as in *Cox*, the statute here gave the putative father total control over the issue of paternity. Regardless of the strength of the illegitimate child's proof, even with proof beyond a reasonable doubt, the child could not establish paternity without the father's written acknowledgment. Such a barrier, impenetrable in this case, went far beyond what was necessary to protect the state's legitimate interests and "work[ed] to shield otherwise invidious discrimination." *Trimble*, 430 U.S. at 771. Because the statute was not substantially related to legitimate state interests, we hold former RCW 11.04.080 unconstitutional.

Although former RCW 11.04.080 is clearly unconstitutional today, we must determine whether claimants could have established their rights as pretermitted heirs at the

time of Frank's death. Because claimants do not have a written acknowledgement of paternity, they must demonstrate that this statute was unconstitutional between 1965 and 1974.[5] Although no Washington case had considered whether a law discriminating against illegitimate children violated equal protection, judicial hostility to such discrimination was clear. The Washington Supreme Court began criticizing discrimination against illegitimate children as early as 1946. In *Heney v. Heney*, a divorce action involving both legitimate and illegitimate children, the court stated:

> When minor children are involved, the state's interest is, that in so far as is possible, provision shall be made for their support, education, and training, to the end that they may grow up to be worthy and useful citizens. It, therefore, follows that there should be no discrimination in this respect between children born out of wedlock and children legitimately born. The public interest is exactly the same in either case.

*Heney v. Heney*, 24 Wn.2d 445, 459, 165 P.2d 864 (1946).

In 1966, the Washington Supreme Court held that marriage of the putative father and mother was not required before proceeding against the father for criminal nonsupport of his illegitimate children. *State v. Russell*, 68 Wn.2d 748, 415 P.2d 503 (1966). The court reasoned that:

> With respect to the argument that RCW 26.20.030 language does not cover unmarried fathers, we are aware that some jurisdictions take this point of view in considering the language of the particular statutes involved. An examination of these authorities discloses they are based on . . . a philosophy of protection of children more hampered by obstructing conditions than prevails in the state of Washington.

*Russell*, 68 Wn.2d at 752. The court noted Washington's demonstrated concern for the protection of children and

---

[5]Frank Magrini died in September 1965. The executors filed a declaration of completion in March 1974, and the estate automatically closed 30 days later. In 1974, RCW 11.76.040 required the personal representative to notify each heir, legatee, devisee and distributee of the time and place of the hearing to settle the final report and distribution.

determined that proof of paternity, regardless of marital status, created the duty to support a child. *Russell*, 68 Wn.2d at 755.

In 1968, the court was required to decide whether the words "child" or "children," designating beneficiaries in Washington's wrongful death statute, included illegitimate children. *Armijo v. Wesselius*, 73 Wn.2d 716, 440 P.2d 471 (1968). It was argued that because the statute was in derogation of the common law, it should be strictly construed. *Armijo*, 73 Wn.2d at 720. But the court rejected the rule of strict construction. Noting the "decisive current trend in legislative and decisional law which ignores legitimacy when creating or applying statues designed to benefit children," the court held the statute included "illegitimates." *Armijo*, 73 Wn.2d at 721 (citations omitted).

Beginning with *Levy v. Louisiana*, 391 U.S. 68, 88 S. Ct. 1509, 20 L. Ed. 2d 436 (1968), the United States Supreme Court issued several landmark opinions concerning the rights of illegitimate children. In *Levy*, the Court refused to restrict the word "child" to "legitimate child" and held that denying the right of illegitimate children to recover for the wrongful death of their mother constituted invidious discrimination. *Levy*, 391 U.S. at 72. In *Weber v. Aetna Cas. & Sur. Co.*, 406 U.S. 164, 92 S. Ct. 1400, 31 L. Ed. 2d 768 (1972), the Court struck down limits on an unacknowledged illegitimate child's recovery of workers' compensation death benefits for the loss of a father:

> Courts are powerless to prevent the social opprobrium suffered by these hapless children, but the Equal Protection Clause does enable us to strike down discriminatory laws relating to status of birth where—as in this case—the classification is justified by no legitimate state interest, compelling or otherwise.

*Weber*, 406 U.S. at 175-76. Finally, the Court has rejected "impenetrable barriers" to the rights of illegitimate children, despite problems with respect to proof of paternity. *Gomez v. Perez*, 409 U.S. 535, 538, 93 S. Ct. 872, 35 L. Ed. 2d 56 (1973) (citations omitted).

Given this judicial hostility to discrimination against illegitimate children, we conclude that former RCW 11.04.080 was unconstitutional during the administration of Frank's estate.[6] When a statute conferring benefits on a certain class of persons is held unconstitutional due to a violation of the equal protection clause, the unlawful discrimination or classification must be eradicated. *Cox*, 684 F.2d at 317. And where the state has intentionally conferred some type of benefit upon one group and thereby unconstitutionally deprived another, the usual judicial remedy is to extend the benefits to the deprived group. *Cox*, 684 F.2d at 317; *see Califano v. Westcott*, 443 U.S. 76, 99 S. Ct. 2655, 61 L. Ed. 2d 382 (1979). The Fifth Circuit resolved a similar problem stating:

> [T]he benefit involved in Georgia's intestacy provisions concerns a child's ability to inherit from a father dying intestate. Were we to find Georgia's intestacy law unconstitutional, and extend the benefits to the illegally deprived class of illegitimate children, Michael Cox would thus be granted the benefits of inheriting the same as legitimate children in similar circumstances.

*Cox*, 684 F.2d at 317. Similarly here, because former RCW 11.04.080 was unconstitutional during the probate of Frank's estate, claimants deserve the same consideration as legitimate children. Since claimants were not provided for in Frank's will,[7] they must be considered pretermitted

---

[6]Shortly after the closure of Frank's estate, the Legislature rewrote RCW 11.04.081 (the statutory successor to former RCW 11.04.080). The new statute provided: "For the purpose of inheritance to, through, and from any child, the effects and treatment of the parent-child relationship shall not depend upon whether or not the parents have been married." (Amended by LAWS OF 1975-76, 2d Ex. Sess., ch. 42, § 24).

[7]The estates do not challenge the assumption that if the claimants were fathered by Frank Magrini, they are pretermitted children under the Washington statute even though they were identified in the will as nieces and a nephew. *See In re Estate of Marshall*, 27 Wn. App. 895, 900, 621 P.2d 187 (1980) (adopted child named as niece in will entitled to take intestate share as pretermitted child).

heirs under former RCW 11.12.090, assuming they can prove that Frank was their father.

## C. Actions Against the Frank Magrini and Rose Magrini Estates

Thus far we have decided that the claimants may have been entitled to notice of the probate of Frank's estate, that former RCW 11.04.080 was unconstitutional during the probate of Frank's estate, and that claimants are not limited to proving Frank's paternity by producing his written acknowledgment of paternity. Finally, we consider whether claimants have grounds to reopen Frank's estate and impose a trust on assets in Rose's estate.

 Failure to give notice to a person entitled to notice of a probate creates a jurisdictional defect in the final decree of distribution. *Hesthagen*, 78 Wn.2d at 944. Such a decree is subject to attack without any time limit. *Hesthagen*, 78 Wn.2d at 945. Here, claimants were apparently not given notice of the probate of Frank's estate.[8] Thus, the claimants have alleged grounds to collaterally attach and reopen the estate of Frank Magrini.

 In addition, a personal representative violates his fiduciary duty by failing to ascertain the identity of heirs and give them notice. *Hesthagen*, 78 Wn.2d at 946. If such a violation results in the transfer of assets to a third person, such assets are held in a constructive trust for the rightful heirs. *Hesthagen*, 78 Wn.2d at 946. Here, the claimants allege that they did not receive notice, that they are pretermitted heirs, and that because of the failure to give notice, Rose received assets to which the claimants were entitled. If so, Rose's estate holds such assets in a constructive trust for the claimants.

---

[8]The issue of notice was apparently not raised in the summary judgment proceedings because the trial court held that RCW 11.04.080 was constitutional. Claimants represent in a footnote that they received no notice of Frank's probate. The record before us does not resolve the issue and nothing in this decision precludes the estates from proving that notice was given to the claimants.

We reverse the summary judgment for the estates and remand.

MORGAN, J., concurs.

SEINFELD, J. — I respectfully dissent. The majority opinion ignores the fact that the claimants all were named in Frank's will and, thus, presumably had notice of the probate. The claimants simply did not know that there were rumors that Frank Magrini was their father, not their uncle. The majority also glosses over the paucity of competent evidence that the claimants are Frank Magrini's children or that Rose knew of this possibility. But even assuming, for purposes of analysis, that the claimants could establish both paternity[9] and Rose's knowledge, the claimants have failed to make the necessary showing to open Frank Magrini's estate. Thus, it is unnecessary to reach the constitutionality issue. *Mount Vernon v. Weston*, 68 Wn. App. 411, 414, 844 P.2d 438 (1992) (court will not reach constitutional issue if it can decide case on nonconstitutional grounds).

### Fraud

CR 60(b) specifies the grounds, other than clerical mistakes, upon which a superior court may vacate a judgment.[10] *Farley v. Davis*, 10 Wn.2d 62, 71, 116 P.2d 263, 155 A.L.R. 1302 (1941) (final adjudications are conclusive against all the world and "cannot be attacked or annulled in any collateral proceeding, except for fraud"). The case law generally requires a showing of fraud to reopen a closed estate although there is an exception for lack of jurisdic-

[9]*See* ER 804(b)(4) (statements concerning declarant's family history not excluded by hearsay rule if declarant is unavailable as a witness).

[10]Superior courts hearing probate and trust proceedings are to apply the civil rules of practice. RCW 11.96.130. CR 60(b)(4) authorizes the court to vacate a judgment procured through fraud, misrepresentation or other misconduct by an adverse party. The moving party must establish, by clear and convincing evidence, the adverse party's misconduct. *Lindgren v. Lindgren*, 58 Wn. App. 588, 596, 794 P.2d 526 (1990).

tion. CR 60(b)(4); *see Hesthagen v. Harby*, 78 Wn.2d 934, 944, 481 P.2d 438 (1971) (jurisdictional defects may provide grounds for vacating a probate decree). Also, under certain circumstances not shown here, the court may allow a collateral attack on an estate based upon a showing of wrongdoing that does not rise to the level of fraud. *Hesthagen*, 78 Wn.2d at 946.

We review the trial court's decision denying the request to vacate a judgment for abuse of discretion. *In re Marriage of Burkey*, 36 Wn. App. 487, 489, 675 P.2d 619 (1984). A trial court abuses its discretion when it bases a discretionary action on untenable grounds or when its discretionary act is manifestly unreasonable. *Prest v. American Bankers Life Assurance Co.*, 79 Wn. App. 93, 97, 900 P.2d 595 (1995).

The claimants' petition to open Frank's estate did not allege fraud. Instead they argue that "[t]here is no need to prove fraud or re-open the Frank Magrini estate" because they are seeking equitable relief in the form of a constructive trust and equitable lien.

## Unjust Enrichment

The claimants base their equitable arguments on the theory that Rose was unjustly enriched by the receipt of proceeds from Frank's estate, a theory that they contend comes within CR 60(b)(11)'s catchall provision. *See Lynch v. Deaconess Med. Ctr.*, 113 Wn.2d 162, 164-65, 776 P.2d 681 (1989). Specifically, the claimants argue that Rose and Frank's attorney, the co-executors of the estate, breached their fiduciary duty by not providing the claimants with notice of the probate proceedings and not advising them of the rumors that Frank Magrini may have been their father.

The premise of the claimants' equitable relief argument is that because of the lack of notice, the trial court lacked jurisdiction over the estate. *See Hesthagen*, 78 Wn.2d at 946 (constructive trust against heirs where administrator failed to notify court of other heirs; "purposeful wrongdoing is substantially irrelevant"). This argument should fail because the executors should not have a duty to give

potential heirs formal notice of the probate under the circumstances here.

The *Hesthagen* decision is central to the claimants' argument that they may collaterally attack a closed estate upon a showing of lack of notice and breach of a fiduciary duty. But the facts in the record here are significantly different from those in *Hesthagen*.

The *Hesthagen* appellants, heirs to an intestate estate, did not receive notice of the estate probate. They learned of the estate proceedings about three years after the estate was distributed. Following further investigation, they brought an action collaterally attacking the final distribution and seeking judgment against the estate administrator and the distributees.[11]

In *Hesthagen*, the identity and location of the appellant heirs was easily ascertainable. 78 Wn.2d at 943. But, according to the *Hesthagen* court, the administrator had totally abdicated his responsibility "to ascertain the identity and whereabouts of all of the heirs" and to provide them with notice of the probate proceedings, thereby violating his fiduciary duty "to exercise the utmost good faith and to utilize the skill, judgment, and diligence which would be employed by the ordinarily cautious and prudent person in the management of his own trust affairs." 78 Wn.2d at 942-43.

The *Hesthagen* court noted that an administrator's failure to notify all heirs constituted a jurisdictional defect and that a probate decree entered under such circumstances was void. 78 Wn.2d at 944. Because the appellants did not seek to reopen the probate, but instead sought judgment for their share of the estate from the defendants, the *Hesthagen* court imposed a constructive trust on the assets that had been wrongfully distributed to the heirs who had received notice of the probate proceedings. 78 Wn.2d at 945-46.

---

[11]Generally, RCW 11.96.100 requires executors to personally serve or mail notice of probate proceedings to all persons having an interest in the estate within 20 days of the hearing date.

A primary obligation of the administrator of the intestate estate in *Hesthagen* was to determine, locate, and notify statutory heirs. 78 Wn.2d at 941. By contrast, here, the decedent left a will naming those individuals to whom he wished to leave his estate. *See In re Estate of Meagher*, 60 Wn.2d 691, 375 P.2d 148 (1962) (right to dispose of property by will is valuable right assured by law and protected by statute). Thus, the executors' duty was to give effect to the lawful intent of the testator and to take all legitimate steps to uphold the will. RCW 11.12.230; *In re Estate of Campbell*, 87 Wn. App. 506, 942 P.2d 1008 (1997); *In re Estate of Riley*, 78 Wn.2d 623, 479 P.2d 1, 48 A.L.R.3D 902 (1970). Further, in construing the will, there was no presumption favoring rights created by descent and distribution statutes as opposed to the statutory right to make a voluntary distribution of one's estate. *Hunt v. Phillips*, 34 Wash. 362, 75 P. 970 (1904).

The majority would require executors to assume the additional burden of locating any possible illegitimate children and notifying them both of the probate and of the rumors that they may be the deceased's illegitimate children. A widow/executrix who fails to do so faces forfeiture of the estate assets if and when the children discover and establish their paternity. And the majority would apply this rule even where the decedent named the illegitimate children in his will, but labeled them as nieces and nephews rather than as children.[12]

Neither *Hesthagen* nor any other authority cited by the

---

[12]A premise of the claimants' case is that Frank and Rose were aware that the claimants were Frank's children. That premise makes this case distinguishable from *In re Estate of Marshall*, 27 Wn. App. 895, 621 P.2d 187 (1980), cited by the majority in footnote 7. At the time the testatrix in *Marshall* executed her will, she "could not recall whether she had adopted" her adult niece. 27 Wn. App. at 899. In ruling for the niece, the *Marshall* court considered the failure of the testatrix's memory, stating, "it is unclear whether she [the testatrix] would have disinherited her niece if she had remembered that the niece had been adopted." 27 Wn. App. at 900. The *Marshall* court then stated, *"Under these circumstances* the naming of Joann Gaidosh [the claimant] as a niece cannot be interpreted as an intentional disinheritance." 27 Wn. App. at 900 (emphasis added). *Marshall*, with its unique circumstances, does not necessarily control the claimants' statutory status here as pretermitted children.

claimants places this onerous responsibility on the executors of an estate. The court stated in *Hesthagen* that the relevant law required a personal representative to make an earnest effort to determine who would be *lawfully* entitled to the estate. *Hesthagen*, 78 Wn.2d at 941. In *Hesthagen*, the claimants qualified as heirs. Thus, they were entitled to notice of the probate proceedings. 78 Wn. App. at 942. Even assuming here that the co-executors were aware of or by due diligence could have learned of the claimants' possible status as Frank's biological children, the co-executors properly could have concluded that former RCW 11.04.080 excluded the claimants as pretermitted heirs. *State v. Blank*, 131 Wn.2d 230, 235, 930 P.2d 1213 (1997) (legislative acts presumed to be constitutional).

While the majority agrees that Rose had a right to rely on former RCW 11.04.080, it holds that Rose had a duty to give notice to "all possible heirs." Under the majority's analysis, these possible heirs included individuals who could not qualify as statutory heirs. Somewhat inexplicably, the majority holds that while Rose had a right to rely on former RCW 11.04.080 and its constitutionality in determining the statutory heirs entitled to notice of the probate proceedings, such reliance would violate due process if it did not include notification to those who did not qualify as heirs under that statute.

Nor have the claimants presented equitable factors that would compel the extraordinary equitable relief they request. The will of Frank Magrini clearly indicates his intention to disclaim any paternal relationship. The claimants are all named and provided for as "nieces and nephews." An award of an intestate share to the claimants as pretermitted heirs would be inconsistent with the testator's intent as expressed in the will. And there is no evidence that either co-executor was hiding facts in an effort to deprive the claimants of a portion of the estate. Consequently, the facts here are in contrast to those in *Francon v. Cox*, 38 Wn.2d 530, 231 P.2d 265 (1951), a case on which the majority relies in holding that Rose had a duty to give the claimants probate notice.

In *Francon*, the decedent's widow neglected to notify the appellant, decedent's daughter by a previous marriage, of the probate of his estate. The widow decided appellant was not her husband's daughter even though the decedent once introduced her as such and, during that same meeting, referred to appellant's child as his granddaughter. It was after reciting these facts that the court found a failure to give the required notice and extrinsic fraud. By contrast, the only evidence of Rose's knowledge is an ambiguous statement that she made 30 years after her husband's death as she lay on her deathbed going "in and out of consciousness." The fact that this case concerns neither statutory heirs nor extrinsic fraud renders *Francon* of limited precedential value.

None of the foregoing is meant to minimize the duty of an executor to give proper notice to any statutory heirs of whom the executor is aware, whether named in the will or not. To knowingly fail to do so would be fraud. *See Stevens v. Torregano*, 13 Cal. Rptr. 604, 192 Cal. App. 2d 105 (1961) (if executor knows of heir and withholds that information from the court, his doing so is extrinsic fraud, justifying a suit in equity by that heir to impose a constructive trust).

Here, as the majority states, the co-executors were entitled to rely on former RCW 11.04.080. Because there is no evidence the co-executors breached their fiduciary duty to the claimants, there is no basis to find that the probate court lacked jurisdiction. Absent a showing of either fraud or a violation of a fiduciary duty, the trial court did not err in dismissing the action to reopen Frank's estate. For the same reasons, the trial court did not err in dismissing the action seeking to impose a constructive trust on the proceeds of Frank Magrini's estate now in the possession of Rose Magrini's estate.

Further, the claimants failed to present evidence sufficient to raise an issue of material fact as to their parentage and thereby overcome the estate's motion for summary judgment. The claimants sought a continuance to gather more information and now contend that the trial court violated CR 56(f) by granting summary judgment without

giving them an opportunity to conduct discovery.[13] But the claimants failed to provide a record of the summary judgment proceedings showing that they brought their objections to the attention of the trial court.[14] Without such a record, we properly should assume that the children are raising this issue for the first time on review, too late for appellate review. RAP 2.5(a); *see also State v. Gentry*, 125 Wn.2d 570, 616, 888 P.2d 1105, *cert. denied*, 516 U.S. 843 (1995) (issue involving compliance with procedural rule may not be raised for first time on appeal).

Because claimants have failed to show that Rose was unjustly enriched by her receipt of the proceeds from her husband's estate or even that they are Frank Magrini's children, I would find that the trial court did not abuse its discretion in denying the motion to vacate.

Reconsideration denied February 12, 1999.

Review granted at 138 Wn.2d 1001 (1999).

---

[13]CR 56(f) provides: "Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

[14]In their reply brief, the children contend that their request for appointment of a administrator de bonis non was, in effect, a request for more discovery time. Even if this filing constituted a request for more time, the children waived this objection if they failed to bring it to the court's attention during the summary judgment hearing.